Michael COLLINS, Plaintiff-Appellant,

v.

John T. KING, Secretary, Department of Corrections, et al., Defendants-Appellees.

No. 83–3255.

United States Court of Appeals, Fifth Circuit.

Sept. 24, 1984.

---

Michael Collins, pro se.

Larry Fabacher, court appointed, New Orleans, La., for plaintiff-appellant.

J. Marvin Montgomery, Karen L. Godwin, Kopsa, Joseph Erwin, Asst. Attys. Gen., Baton Rouge, La., for defendants-appellees.

Before GEE, JOLLY and DAVIS, Circuit Judges.

GEE, Circuit Judge:

Collins, a Louisiana state prisoner, appeals to us from the dismissal of his Section 1983 action against various prison officials and guards.[1]

The action had its inception in an incident that occurred when Collins, leaving his job in the prison kitchen, was checked by Defendant Johnson, a guard, and found to be carrying three small packets of sugar. According to the allegations of Collins' complaint, which in the posture of the case we accept as true, Johnson took him to the security office and cuffed him around in the presence of four other guards.[2] At a disciplinary hearing on charges of aggravated disobedience, defiance, and attempted

---

1. 42 U.S.C. § 1983. Although entered in response to defendant's motion for summary judgment, both in form and substance the court's order more resembles a dismissal for failure to state a cause of action.

2. Johnson's version of the incident was different: that Collins threw the sugar on the floor, refused to retrieve it when ordered to do so, cursed him, and attempted to strike him.

theft, Collins was adjudicated guilty and committed to extended lockdown. He did not appeal to Defendant Phelps, then Secretary of the Louisiana Department of Corrections, as authorized by Louisiana Disciplinary Rules and Procedures for Adult Prisoners.

Instead he brought this action, pleading his version of the incident as stated above and denying that he attempted to strike Johnson. In addition, he asserted that Defendant Wall, a Lieutenant Colonel in the prison system, sat as a member of the Disciplinary Board in his case only and remarked after leaving Collins' hearing that he was having Collins locked up for "beating a previous write-up" (disciplinary charge). In addition, Collins asserted that he should have been charged with theft of the sugar only, not with defiance or disobedience, in effect seeking court review of the Disciplinary Board's finding that he was guilty of all charges. The sole relief sought by Collins was reinstatement in his trustee status and job assignment, both lost in consequence of the Board's action. The parties consented to a magistrate's conducting all proceedings in the case.

The defendants moved for summary judgment in the case, pointing out the undisputed fact that Collins had not appealed the Disciplinary Board's decision in his case to Defendant Phelps and hence had not availed himself of the procedure provided by the state to protect his rights. Collins filed no response to the motion. In his consideration of the defendants' motion, the magistrate construed Collins' action as being laid under 42 U.S.C. § 1983 and complaining of violations of his right to procedural due process guaranteed by the Fourteenth Amendment. Given the nature of Collins' complaints—of a biased administrative tribunal and of excessive charges made against him—and of the relief that he sought, we think that the magistrate was correct in doing so.

Fairly read, Collins' complaint states that by being placed in extended lockdown he was deprived of a liberty interest. We have recently held to this precise effect.

*McCrae v. Hankins,* 720 F.2d 863, 866–68 (5th Cir.1983) (Louisiana prisoner placed in extended lockdown, liberty interest extended by Louisiana regulations). It then goes on to state that he suffered this deprivation because untrue and excessive charges were made against him and were passed on by a biased tribunal. These are clearly complaints about a want of procedural due process. Finally, he advises that what he wants as the result of his action is restoration of his liberty interest: his job and his trustee status. Necessarily this would entail his release from lockdown.

So construing the complaint, the magistrate concluded that since Collins had failed to avail himself of the state process and procedures provided him, he could not complain that he had been denied due process. He therefore dismissed Collins' complaint. On appeal to us, Collins raises several points, and his appointed counsel adds others by a supplemental brief.

■ First, Collins complains that the magistrate misconstrued his complaint to allege due process violations only, when it also asserted cruel and unusual punishment in violation of the Eighth Amendment. We disagree. As we have already noted, the complaint does aver that he was manhandled by a guard. It does so, however, merely in the course of asserting that the charges of defiance and disobedience laid against him were untrue and excessive. Nowhere does he seek any relief on the basis of that incident, and that which he did seek—reinstatement in his job and status—is scarcely appropriate to redressing such a constitutional violation. Finally, when the defendants sought to have Collins' case dismissed for his failure to pursue the administrative remedies provided him, a defense at least cognate to an appropriate one against a due process claim but entirely inappropriate to an Eighth Amendment one, Collins made no response. *See Augustine v. Doe,* 740 F.2d 322 (5th Cir.1984). We find no merit in this contention.

The remaining contentions of Collins and his counsel, however, although somewhat inartfully advanced, are not so easily dis-

posed of. As we understand them, they raise difficult questions of the interplay between recent Supreme Court decisions and a congressional enactment, as well as the effect of recent decisions of our Court. As best we can restate them, the major contention is that the magistrate's decision in this case amounts to nothing less than requiring exhaustion of administrative remedies before entertaining a Section 1983 action, a requirement forbidden by *Patsy v. Florida Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). In addition, it is said, the Civil Rights of Institutionalized Persons Act (CRIPA), 42 U.S.C. § 1997e, and our decision in *Johnson v. King*, 696 F.2d 370 (5th Cir.1983), require a remand. Finally, Collins asserts that the disciplinary rules under which he was administratively penalized cannot serve as any basis for requiring limited exhaustion pursuant to CRIPA, because they have not been certified by the Attorney General as "in substantial compliance with ... minimum acceptable standards" as required by CRIPA, adding that the appeal to Defendant Phelps that he failed to pursue was not adequate or meaningful because it "takes practically one year." Before responding to these difficult issues and addressing such as we must, we shall briefly survey pertinent Supreme Court authority, as well as recent decisions of our own Court.

### Background of Authority

*Patsy v. Florida Board of Regents, supra,* was a Section 1983 action by a white female secretary who contended that her right to equal protection of the laws was violated by sex discrimination and by "affirmative action" programs under which other persons were preferred over her on the basis of race. In an exhaustive and careful opinion, a majority of our Court, sitting en banc, held that adequate and appropriate state remedies must be ex-

hausted by a plaintiff before we would entertain such an action.[3] The Supreme Court, numerically inferior but institutionally superior,[4] reversed our decision.

It did so primarily on an analysis of the legislative history of two congressional enactments, that of Section 1 of the Civil Rights Act of 1871, 17 Stat. 13, the precursor of Section 1983, and CRIPA. Examining the congressional proceedings in connection with CRIPA, the court ascertained that in that act the Congress enacted a narrow exception to the non-exhaustion doctrines established by the Court, quoting such passages from congressional reports as that "the Supreme Court has held, that in 1983 civil rights suits the litigant need not necessarily fully exhaust State remedies" and remarks such as that of Rep. Drinan that requiring exhaustion of remedies was "something the Supreme Court has consistently refused to do." 457 U.S. at 509, 102 S.Ct. at 2564. Some pages later, it declared that "[i]t is not for us to say whether Congress will or should create a similar scheme for other categories of § 1983 claims or whether Congress will or should adopt an altogether different exhaustion requirement for non-prisoner § 1983 claims." 457 U.S. at 515, 102 S.Ct. at 2567. In view of the original purposes of the Civil Rights Act of 1871, and of the trepidation with which Congress enacted so limited and narrow an exhaustion requirement as CRIPA, the Court concluded that we erred in ascertaining the somewhat broader one that we did in *Patsy*.

Thus the exhaustion requirement came to rest in a posture of reciprocal deference, first by Congress to what the Court had held Congress meant to say and next by the Court to Congress. And so, having laid it down that exhaustion was not required, the Court appeared to retire from the field, leaving the matter of further inroads on its non-exhaustion rule for Section 1983 actions to the Congress. This was not, how-

---

**3.** 634 F.2d 900 (5th Cir.1981). The opinion rests primarily on the recognized policy reasons supporting the general rule requiring exhaustion, *McKart v. United States,* 395 U.S. 185, 89 S.Ct.

1657, 23 L.Ed.2d 194 (1969), as well as on court of appeals' decisions and secondary authority.

**4.** At that time our en banc court disposed of 25 judges, 24 of whom sat in the case.

ever, to be quite the case, since a cognate doctrine applicable only to procedural due process cases waited in the wings.

 Just over a year before its opinion in *Patsy,* the Supreme Court had handed down *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In that case a Nebraska state prisoner had successfully invoked Section 1983 and the powers both of the federal district court and of the Eighth Circuit to recover the value of a hobby kit, negligently lost when prison employees failed to follow established mail-handling procedures. The Supreme Court reversed, recoiling from an interpretation of Section 1983 that "would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under 'color of law' into a violation of the Fourteenth Amendment cognizable under § 1983." 451 U.S. at 544, 101 S.Ct. at 1917. Although recognizing that Taylor had been deprived of property by action under color of state law, the Court held that the deprivation was not redressable under the Fourteenth Amendment because it was not "without due process of law." 451 U.S. at 537, 101 S.Ct. at 1914. This was so, the Court reasoned, because the state had provided Taylor an adequate post-deprivation remedy by way of a common-law tort suit in circumstances—random and unpredictable negligent action by state employees in violation of established procedures—where a predeprivation remedy was impractical. So observing, the Court held that Taylor had failed even to *allege* a violation of the Due Process Clause of the Fourteenth Amendment. 451 U.S. at 543, 101 S.Ct. at 1917. After *Parratt,* then, it is necessary, in order to make out a procedural due process claim, for one to allege not only a deprivation of property by state action, but also that "state procedures available for challenging the deprivation do not satisfy the requirements of due process." *Thibodeaux v.*

*Bordelon,* 740 F.2d 329 at 334 (5th Cir. 1984).

The Courts of Appeals promptly divided on the question whether the *Parratt* rule applies to *intentional* deprivations, four concluding that it did, three that it did not. *Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 3202 n. 10, 82 L.Ed.2d 393 (1984). Our Circuit sided with the minority, *Brewer v. Blackwell,* 692 F.2d 387 (5th Cir.1982); and while the law of our Circuit was in this posture we handed down *Johnson v. King,* 696 F.2d 370 (5th Cir.1983).

*Johnson* is strikingly similar to today's case. In it a Louisiana state prisoner was administratively disciplined for defiance and disobedience, filed no administrative appeal, and brought a Section 1983 action asserting that "he was improperly written up for violations of prison disciplinary rules." 696 F.2d at 371. Relying on our soon-to-be reversed decision in *Patsy, supra,* the district court granted summary judgment on the ground that Johnson had failed to exhaust his administrative remedies. Pending Johnson's appeal to us, the Supreme Court reversed our *Patsy* decision. Nothing this development, we reversed the judgment of the trial court and remanded the case "for reconsideration under CRIPA." *Id.* It is not crystal clear from our decision what that reconsideration was to encompass; and although it is fair to say that the opinion appears to assume that CRIPA applies to such a case, the opinion does not squarely so hold. Nevertheless, we think the fairest interpretation of our remand order to be that pursuant to it the district court was to determine, in accordance with Section (a)(2) of CRIPA,[5] whether the Louisiana administrative remedies in question in *Johnson* and in today's case pass muster under CRIPA's standards.

During the pendency of the present appeal, the Supreme Court resolved the conflict between circuits over whether the rule

---

**5.** The exhaustion of administrative remedies under paragraph (1) may not be required unless the Attorney General has certified *or the court* has determined that such administrative remedies are in substantial compliance with the minimum acceptable standards promulgated under subsection (b) of this section. 42 U.S.C. § 1997e(a)(2) (emphasis added).

of *Parratt* applies to *intentional* deprivations as well as to merely negligent ones. In *Hudson*, — U.S. —, 104 S.Ct. at 3194, 82 L.Ed.2d 393, the Court held that it does. The Court's reasoning is brief and to the point:

> While *Parratt* is necessarily limited by its facts to negligent deprivations of property, it is evident, as the Court of Appeals recognized, that its reasoning applies as well to intentional deprivations of property. The underlying rationale of *Parratt* is that when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply "impracticable" since the state cannot know when such deprivations will occur. We can discern no logical distinction between negligent and intentional deprivations of property insofar as the "practicability" of affording predeprivation process is concerned. The State can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct. Arguably, intentional acts are even more difficult to anticipate because one bent on intentionally depriving a person of his property might well take affirmative steps to avoid signalling his intent.
>
> If negligent deprivations of property do not violate the Due Process Clause because predeprivation process is impracticable, it follows that intentional deprivations do not violate that Clause provided, of course, that adequate state postdeprivation remedies are available. Accordingly, we hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the State's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.[14]

[14] Our holding that an intentional deprivation of property does not give rise to a violation of the Due Process Clause if the State provides an adequate postdeprivation remedy was foreshadowed by our discussion of *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), in *Parratt*. We noted that our analysis was "quite consistent" with that in *Ingraham*, a case that, we observed, involved intentional conduct on behalf of state officials. 451 U.S. at 542, 101 S.Ct. at 1916.

— U.S. at —, 104 S.Ct. at 3203–04.

Close on the heels of *Hudson* followed our decision that both it and *Parratt* apply to due process cases involving deprivations of liberty, such as we treat today, as well as to those concerning property. *Thibodeaux v. Bordelon*, 740 F.2d 329 (5th Cir. 1984).

Our survey of applicable law completed, we turn to the matter at hand.

### The Law Applied

■ As we observed at the outset, Collins asserts a failure to accord him procedural due process in two respects. The first is that his charges were tried by a biased tribunal:

> Upon arriving at the disciplinary board, Lt. Col. Richard Wall walked in and held my case and after my case he left and put the original board back in charge of the other persons coming up for hearing. He had sentenced me to Camp "J" extended lockup. After leaving the board room, Lt. Col. Wall stated that he locked me up for beating a previous write-up.

Due process requires, as we have long held, that such hearings be conducted before a tribunal having at least "an apparent impartiality toward the charges." *Ferguson v. Thomas*, 430 F.2d 852 (5th Cir.1970). Thus the complaint goes far toward asserting a Fourteenth Amendment claim, although not far enough, as we shall see.

■ His second claim is that he was improperly charged with things he did not do: that he should have been charged only with theft of the sugar, not with disobedience and defiance. This claim, standing alone and as made, does not state a deprivation of due process. As we noted in

*McCrae v. Hankins,* 720 F.2d 863, 868 (5th Cir.1983), "The constitution demands due process, not error-free decision-making...." If the disciplinary proceeding was otherwise fair and adequate, the opportunity that it afforded Collins to clear himself of misdeeds which he did not commit sufficed.

Returning to Collins' complaint of a biased tribunal, it is plain that *Hudson, supra,* governs and that under the *Hudson* rule it is not sufficient to state a claim. Collins does not assert that it was part of state procedure to constitute tribunals such as his in such a manner. Indeed, his allegations that a biased, high-ranking prison officer simply took it upon himself to sit in Collins' case only and to punish him on the basis of an earlier, extraneous event present just such an instance of random and unpredictable action by a state employee in violation of established procedure as is envisioned by both *Parratt* and *Hudson.* Nor did Collins allege that Louisiana procedures for redress of the improper administrative proceeding in his case were constitutionally inadequate.[6] It follows that, by the teachings of *Parratt* and *Hudson,* he did not allege a violation of the Due Process Clause of the Fourteenth Amendment and his action was properly dismissed.

*Patsy* is not to the contrary, for we do not deal today with the exhaustion doctrine but rather with a cognate one: that in a Section 1983 action grounded in denial of procedural due process by a state, one must plead either or both that the state has established a procedure that itself is constitutionally deficient or that it has provided no adequate remedy for aberrational departures by its servants from proper procedures.[7] Collins did neither. This being the case, we need not address the objections raised by Collins to the reasons for its judgment stated by the trial court. For the reasons that we have given, whether or not for any other, it was correct. The judgment appealed from is

AFFIRMED.

---

6. He so asserts to us; however, we do not entertain contentions regarding factual or mixed questions of law and fact that were not presented to the trial court.

7. The need for the missing allegation was, as the Court noted in *Hudson,* foreshadowed by *Parratt'*s discussion of *Ingraham v. Wright,* 430 U.S. 651 (1977). *Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 3204 n. 14 (1984).