Elisabeth B. CROCKER, Plaintiff,

v.

FLUVANNA COUNTY (VA) BOARD OF PUBLIC WELFARE, a/k/a Fluvanna County Social Services, et al., Defendants.

Civ. A. No. 86–0188–D–C.

United States District Court,
W.D. Virginia,
Charlottesville Division.

Sept. 18, 1987.

As Corrected Oct. 6 and Dec. 1, 1987.

Gilbert K. Davis, Davis & Harris, Herndon, Va., for plaintiff.

Carlton S. Gregory, Asst. Atty. Gen., Verona, Va., R. Craig Wood, McGuire, Woods & Battle, Charlottesville, Va., for defendants.

MEMORANDUM OPINION

KISER, District Judge.

Before the Court for disposition are motions for summary judgment filed on behalf of all the Defendants in the above-captioned case. On July 22, 1987, oral arguments were heard. For the reasons discussed hereinafter, Defendants' motions are granted on the federal claims, and the pendent state claims are dismissed.

I. *Background*

On November 10, 1986, the Plaintiff, Elisabeth B. Crocker (hereinafter "Crocker" or "Plaintiff") filed this action against

the Fluvanna Board of Public Welfare (hereinafter "the Board"), each individual member of the Board, and the Director of the Valley Regional Office of the Virginia Department of Social Services ("the Director"), alleging several federal claims pursuant to 42 U.S.C. §§ 1983 and 1985.

In her Complaint, Crocker alleged that the Board, its members, and the Director of the Department of Social Services, acting pursuant to a conspiracy, actually and/or constructively discharged her from her position as Director of Fluvanna County Department of Social Services, thereby depriving her of property and liberty interests without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution. She seeks injunctive relief, monetary damages and attorneys' fees.

In addition, Crocker pleaded several pendent state claims, alleging due process violations under the Virginia Constitution; violations of Va.Code 1950 § 2.1–114.5:1; breach of contract; and interference with contractual rights. This Court has jurisdiction pursuant to 42 U.S.C. §§ 1983 and 1985; 28 U.S.C. § 1343(a)(3); the Fifth and Fourteenth Amendments to the United States Constitution; and the doctrine of pendent jurisdiction.

The Defendants moved for partial summary judgment on the issues of violation of procedural due process and conspiracy. State Defendant, the Director, also has moved for summary judgment on the grounds that the Eleventh Amendment bars recovery against him in his official capacity, and that he is entitled to good faith immunity. All the Defendants moved to dismiss the pendent state claims for lack of underlying federal jurisdiction.

At the hearing on July 22, 1987, it became clear from Plaintiff's oral argument that, insofar as the federal claims are concerned, there is essentially only one issue: whether the Plaintiff was denied due process during her pre-termination hearing because one or more of the members of the Board had a personal bias against her. The Defendants' reply to this allegation is that, assuming it to be true, it is not grounds for a due process claim, because the Plaintiff had ample opportunity to challenge the dismissal through the State's grievance procedure.

At oral argument, the Plaintiff took the position that she was not entitled to the grievance procedure because she was an "agency head." This position was untenable because it is apparent that she was not an agency head within the meaning of the exclusion in the grievance procedure. The Plaintiff appears to have abandoned this position in her post-argument brief, in which the only issue discussed was whether she was given a proper pre-termination hearing prior to discharge, considering the alleged bias of the hearing body. That issue, then, is the sole issue I will decide in this case.

## II. Statement of the Facts

When a defendant seeks summary judgment, the facts must be construed in a light most favorable to the plaintiff. In this case, the Plaintiff does not disagree with any factual statements contained in the Defendants' motions; however, she relies on certain additional facts which are included in the following summary.

Crocker was appointed Director of Fluvanna County Department of Social Services in September of 1979. Defendant Fluvanna County Board of Public Welfare is the employer and supervising body of the Fluvanna Department of Social Services. At all material times relating to this suit, Defendant Ann Moshenek was the Chairman of the Fluvanna County Board of Public Welfare. Defendants Thomas J. Bugg, Louise Campbell, Helen Morris, and Kenneth Woodson were members of the Fluvanna County Board of Public Welfare, and Defendant A. Jackson Ridder was the Director of the Valley Regional Office of the Virginia Department of Social Services.

Crocker's responsibility as Director of the Department of Social Services included general management of the Department and advising personnel in administrative procedures. As part of those responsibilities, it was her duty to advise employees of their grievance rights under Virginia's

State Grievance Procedure. Shortly, after beginning her employment, she attended a training seminar on employee rights and grievance procedures. As a result, Crocker was aware of the State Grievance Procedure, and during her service as Director, she had, at least on one occasion, advised an employee on the Procedure.

The Plaintiff received above-average evaluations by the Board during her tenure as Director of the Department of Social Services, using the standardized "Performance Appraisal" evaluation form. However, on several occasions during her employment, Crocker was informed by the Board that it was concerned with the rate of her absence from the office and her tardiness in arriving at work.

On or about February 3, 1986, Plaintiff received a telephone call from Defendant A. Jackson Ridder informing her that she would receive her evaluation by the Board on February 4, 1986, and that she should appear at about 4:15 P.M. All the Defendants were present at the February 4th meeting.

It is important, at this point, to highlight the Plaintiff's relationships with three of the five Board members at the meeting, as they formed the basis for her due process claim. First, the Plaintiff claims that Board member Thomas Bugg was biased against the Plaintiff because the Plaintiff had had a close friend running against Bugg in a 1985 political race. The Plaintiff claims that this partiality of Defendant Bugg was recognized by two other Board members and expressed to the Plaintiff in previous conversations. Second, the Plaintiff claims that Chairman of the Board, Ann Moshenek, was biased against the Plaintiff because previously Moshenek had been a candidate for the job as Director of the Department of Social Services that had been awarded to the Plaintiff in 1979. Moreover, in 1979 and 1980, Moshenek was a subordinate of the Plaintiff's in the Department, and the Plaintiff claims that animosity and personal hostility developed as a result of that relationship. Moshenek resigned some four to six months after the Plaintiff became Director of the Depart-

ment, but the Plaintiff does not claim that Moshenek's resignation was due to the animosity between them. Moshenek then accepted a position on the Board.

Finally, Board member Louise Campbell also had worked previously at the Department of Social Services under the Plaintiff, who claims Campbell left the agency under "poor circumstances," and that she had not worked well with her immediate supervisor or with any of her co-workers. The Plaintiff does not claim that Campbell developed any personal animosity toward her during the time Campbell worked under her at the agency; however, she claims the two had differences of opinion once Campbell took a position on the Board.

At the February 4th meeting, then, the Board, consisting of the three above-named parties as well as two other Defendants, Helen Morris and Kenneth Woodson, informed Crocker for the first time that her performance was unsatisfactory in each of the ten categories covered by the evaluation sheet, and that the Board intended to terminate her employment on February 28, 1986, unless she resigned her position effective as of that date. She was told that, if she resigned, her evaluation sheet would be destroyed, and the minutes of the meeting also would not reflect a negative report. Upon the Plaintiff's request, Defendant Ann Moshenek explained the reasons for her unsatisfactory performance. The Plaintiff then refuted the charges against her, admitting that she was able to "quite calmly present [her] side on each of the ten issues."

The Defendants demanded an immediate response as to whether the Plaintiff would resign or be discharged. The Plaintiff wrote and signed a letter, dated February 4, 1986, making her resignation effective as of February 28, 1986, and she asked the Board to destroy the evaluation, which the Board did.

The Plaintiff had grievance rights to contest the adverse actions taken against her under the Virginia Grievance Procedure for State Employees. Neither the Board nor any other Defendant advised the Plaintiff of her right to grieve the actions taken by

the Board, nor of any procedures to follow in appealing such actions. Despite the fact that it was part of her job to counsel others on their grievance rights, the Plaintiff asserts she was not aware grievance rights were available to her until some time before she handed her written grievance to Helen Morris, Vice–Chairman of the Board, on Sunday, March 30, 1986, at Ms. Morris' home. The Chairman of the Board denied her a grievance hearing on the grounds that the request was not timely filed. Although the State Grievance Procedures provided her with the opportunity to appeal the Chairman's decision to the agency head or the state court system, Crocker did not pursue these remedies. Rather, she brought this action against the Defendants.

Crocker's sole claim, based on her oral argument and her post-argument brief, is that, although she was given a chance to tell her side of the story in the February 4 meeting, that pre-termination hearing did not satisfactorily provide her with notice and a meaningful opportunity to be heard as required by due process, because of the lack of impartiality of some of the Board members. The Defendants contend that Crocker has no grounds for claiming denial of due process because, even assuming there was bias in the pre-termination hearing, the Plaintiff had an adequate post-termination remedy available to her under the Virginia grievance procedure which could have redressed her alleged deprivation.

### III. *Discussion*

When a motion for summary judgment is made under Fed.R.Civ.P. 56, the opponent has the burden of showing, by proper affidavits or other evidence, the existence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In meeting this burden, the non-movant "may not rest upon mere allegation or denials of his pleading" but must present "affirmative evidence" showing a genuine issue for trial. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). A non-movant has met its burden of showing that a dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 106 S.Ct. at 2510. Further, inferences drawn from the evidence by the jury must be "reasonably probable." *Lovelace v. Sherwin–Williams Co.,* 681 F.2d 230, 241 (4th Cir.1982).

The Plaintiff has submitted evidence buttressing allegations contained in her Complaint of bias in her pre-termination hearing. Despite such evidence, however, she does not meet her burden of showing the existence of a genuine issue of material fact. Assuming as a matter of fact that bias in the hearing tribunal did exist, I still am compelled to find that the requirements of due process were met.

As a threshold matter, the Plaintiff has alleged a protectible property interest. I will assume that she does indeed possess one.[1]

In *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the United States Supreme Court set out the scope of pre-termination procedures that are due public employees. *Brasslett v. Cota,* 761 F.2d 827 (1st Cir.1985), recognized that "the root requirement" of the due process clause under *Loudermill* is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Id.* at 836, quoting *Loudermill,* 470 U.S. 542, 105 S.Ct. at 1493.

But although *Loudermill* requires that an employee holding such an interest in his employment be afforded "some kind of hearing" before he may be discharged, *id.,* quoting *Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493, the hearing:

> ... need not be elaborate. The specific procedural requirements are to be deter-

---

**1.** In *Detweiler v. Commonwealth of Virginia Department of Rehabilitative Services,* 705 F.2d 557 (4th Cir.1983), the Fourth Circuit held that under Virginia law, a non-probationary employee of the state had a property interest in his job. It is my belief that *Detweiler* operates to give the Plaintiff in this case a property interest in continued employment as well; however, that question need not be decided here.

mined with reference to the interests involved and the availability and extent of post-termination review. When a discharged employee may receive a post-termination hearing to review adverse personnel actions, the pre-termination hearing need only be extensive enough to guard against mistaken decisions. Accordingly, a 'tenured employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.'

*Id.,* quoting *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495.

Here, the State Grievance Procedure provided the Plaintiff with a right to a post-termination review. In addition, she was notified of the Board's intention to discharge her, and was afforded an opportunity to defend her actions and rebut any erroneous information in the February 4th pre-termination meeting. Upon request, the Plaintiff was given a list of reasons for her proposed termination and she was, in her own words, able to "quite calmly present [her] side" on each of the issues. These facts are not disputed, and under them, the requirements of *Loudermill* were met. *See Rana v. United States,* 812 F.2d 887, 890 (4th Cir.1987) ("... While Rana had a protected property interest in his job, he received the only process to which he was due: a notice of proposed removal, a chance to respond, and a post-termination hearing."); *Brasslett v. Cota,* 761 F.2d 827 (1st Cir.1985) (Plaintiff was not denied due process after he was notified of the possibility of discharge and was afforded an ample opportunity to defend his actions and rebut any erroneous allegations.)

The Plaintiff contends, however, that her hearing was not meaningful and thus did not afford her due process of law because of bias in the hearing tribunal.

As stated in *Loudermill,* the purpose of the pre-termination hearing is to guard against mistaken decisions. The Fourth Circuit recently stated in *Varandani v. Bowen,* 824 F.2d 307 (4th Cir.1987), "a pre-termination hearing 'need not definitely re-solve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" *Id.* quoting *Loudermill,* 470 U.S. at 545–46, 105 S.Ct. at 1495.

It is true that the risk of wrongful termination is greater when the pre-termination tribunal is not totally impartial; however, the risk of erroneous deprivation is not the only interest involved in determining the requirements of due process. To determine the extent of constitutional procedures necessary to protect against the wrongful taking of property from an employee, a balance must be struck between the government's and the employee's respective interests. *Rodgers v. Norfolk School Board,* 755 F.2d 59 (4th Cir.1985); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

In *Schaper v. City of Huntsville,* 813 F.2d 709 (5th Cir.1987) *reh'g denied* 818 F.2d 865 (en banc), the plaintiff, captain of the City of Huntsville Police Department, claimed his due process rights were violated by a conspiracy to terminate him by the city's chief of police and city manager who were biased against him. The chief of police initially notified the plaintiff in writing of his intention to discharge him, and the plaintiff appealed his decision to the city manager pursuant to the personnel policies enacted by the city council. The city manager stayed the initial decision and suspended Schaper with pay until the outcome of the appeal.

The Fifth Circuit, limiting its decision to the question of whether due process was denied in the pre-termination hearing, stated:

Here, the 'conspiracy,' if true, obviously would have infected the pre-termination hearings with bias. However, the state cannot be expected to anticipate such unauthorized and corrupt conduct. Nor does due process require the state to provide an impartial decision maker at the pre-termination hearing. The state is obligated only to make available 'the

means by which [Schaper] can receive redress for the deprivations.' *Parratt [v. Taylor]*, 451 U.S. [527] 543, 101 S.Ct. [1908] 1917 [68 L.Ed.2d 420 (1981)].

*Schaper*, 813 F.2d at 715–16.

In so holding, the court relied on *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), in which Chief Justice Burger, and Justices Rehnquist and Stewart, in the *Arnett* plurality, and Justices Powell and Blackman, concurring, argued that due process does not require an impartial hearing officer at the pre-termination stage. It particularly cited with approval, Justice Powell's position, that significant practical considerations inveighed against such a requirement:

> In most cases, the employee's supervisor is the official best informed about the 'cause' for termination. If disqualification is required on the ground that the response of the supervisor could not be wholly impartial, the removal procedure would become increasingly complex. And, in fact, a 'mini trial' would be necessary to educate the impartial decision-maker as to the basis for termination.

*Schaper*, 813 F.2d at 715 n. 7, citing *Arnett*, 416 U.S. 170 n. 5, 94 S.Ct. 1652 n. 5.

Justice Powell's point is well-taken. And the complex procedures envisioned by the Justice with regard to educating the decision-maker, are but a minute part of the burden that actually would be imposed upon the State were it required to ensure impartiality in a pre-termination hearing. Bias in a pre-termination hearing is not an established State procedure, but rather, a "random, or unauthorized act," which is impracticable and often impossible for the State to anticipate. *See Schaper*, 813 F.2d at 715; *Holloway v. Walker*, 784 F.2d 1287, 1291–93 (5th Cir.1986) *cert. denied*, —— U.S. ——, 107 S.Ct. 571, 93 L.Ed.2d 576 (1986); *Collins v. King*, 743 F.2d 248, 254 (5th Cir.1984). The implementation of a system to root out members of pre-termination tribunals infected with such bias would create a resource-consuming monster in the event that any state employee were fired.

Elaborate pre-termination proceedings also would place an "excessive burden on the government's interest in quickly removing an unsatisfactory employee." *Loudermill*, 470 U.S. at 545–46, 105 S.Ct. at 1495–96. *See Woodson v. Leidinger*, 385 F.Supp. 892, 894 (E.D.Va.1974) (The government has a strong interest in "being able to act expeditiously in controlling and managing its personnel and internal affairs, including the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch.") As Justice Powell pointed out in *Arnett*, the employer is the person with the most knowledge about the fitness of the employee in his present position. It is unclear that the state, or the employee for that matter, would be benefited by discarding from the decision-making seat those who may have the most pertinent information regarding the employee.

Clearly, due process does not require the State to implement a system as unwieldy as that which would be required to root out bias at the pretermination stage. Rather, it requires a balancing of three factors: the private interest of the employee, the risk of erroneous deprivation of such interest through the state procedures used, and the government's interest, "including the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. at 903. A balancing of the competing interests at stake in employment termination cases compels a conclusion that some form of hearing is required in all such cases. *Loudermill*, 470 U.S. at 542, 105 S.Ct. at 1493. The appropriate balance, however, does not guarantee full protection from personal animosity and human foibles to the Plaintiff. *See Collins v. King*, 743 F.2d 248, 254 (5th Cir.1984) ("... the Constitution demands due process, not error-free decision-making ...") Rather, the weighty interest a state has in efficient government operation must be taken into account. In so doing, I find that the notice and opportunity the Plaintiff received in the present case to refute her employer's

criticisms were all that was necessary under the due process clause.

I arrive at this conclusion, however, with the knowledge that state procedures existed that would have afforded the Plaintiff the opportunity to redress possible deprivations in a post-termination hearing.

In *Morris v. City of Danville*, 744 F.2d 1041 (4th Cir.1984), the Fourth Circuit described the nature of the pre-termination hearing accorded the plaintiff/public employee in that case as "largely a procedural step, designed to inform [the plaintiff] of the charges against him and of his opportunity to respond to them at a subsequent hearing." *Id.* at 1045.

The pre-termination hearing in this case can be described similarly. The Plaintiff was given notice of the Board's intention to terminate her, and an opportunity to respond and resign. The authority to which she responded was not totally unbiased; however, the Plaintiff had available to her, as did other state employees, a grievance procedure which would have afforded her a full evidentiary hearing before an impartial tribunal, had she filed the grievance within thirty days of her dismissal date. Although the Plaintiff claims she filed a grievance and was denied a hearing twice by the Chairman of the Board, the record shows that the grievance was filed after the expiration of the 30–day limitation period. In any event, she could have appealed the Chairman's decision to not accept the grievance to the head of the agency. Furthermore, the grievance procedure provided for appeal to the circuit courts were she to have been denied a panel hearing by the agency head.

The post-termination grievance procedure provided by the state was an adequate remedy for any "aberrational departures by its servants from proper procedures," *Collins v. King*, 743 F.2d 248, 254 (5th Cir.1984), including bias or personal animosity. Since the Plaintiff chose not to pursue them, she cannot now claim the state failed to provide her with due process.

For the above reasons, the Defendants' Motion for Summary Judgment with re-gard to the federal claims will be GRANTED, and the Court, in the exercise of its discretion, will not entertain the pendent state claims. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Thus, the Plaintiff's claims of breach of contract and interference with contractual rights will be dismissed without prejudice.

An appropriate Judgment Order will be entered.