IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-20926
_____


TERRENCE R. SPELLMON,

Plaintiff - Appellant

v.

J. KEITH PRICE, ET AL.,

Defendants - Appellees

_____

Appeal from the United States District Court
for the Southern District of Texas
(CA-H-93-3712)
_____

October 10, 1996
Before KING and HIGGINBOTHAM, Circuit Judges, and KAZEN,[*]
District Judge.


PER CURIAM:[**]

    Texas prisoner Terrence Spellmon, proceeding pro se and in

_____

    [*] District Judge for the Southern District of Texas, sitting
by designation.

    [**] Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

1

forma pauperis, filed this action under 42 U.S.C. § 1983 alleging that various prison personnel violated his constitutional rights. The district court dismissed his claims as frivolous pursuant to 28 U.S.C. § 1915(d), and Spellmon appeals. We affirm.

## I. BACKGROUND

### A. Facts

Spellmon's constitutional claims are based on allegations concerning several separate disciplinary incidents, summarized as follows. On February 9, 1993, Lieutenant T.C. Carroll and another official searched Spellmon's storage box in an unsuccessful hunt for marijuana and cash. Later that day Carroll informed Spellmon that he had found a contraband "stinger" (an electrical heating device) in Spellmon's cell; Spellmon denied the charge. Carroll nevertheless filed a disciplinary report charging Spellmon with possession of contraband. Spellmon was consequently disciplined with 30 days recreation restriction, 30 days commissary restriction, and 30 days day room restriction.

Three days later, while Spellmon was in the law library, Carroll wrongly accused him of taking a sheet of paper from another inmate and told him to leave the library. When Spellmon requested a grievance form, Carroll responded that he would file a report against Spellmon. On February 19, 1993, while Spellmon was being held in pretrial detention, Carroll refused to pick up his request for a law book, causing a two-day delay in Spellmon's

2

access to the law library.

On January 27, 1993, Spellmon was proceeding from his cellblock to the law library when Officer S. Willmore, apparently in response to a disturbance in the hall, grabbed him and pushed him back to his assigned quarters. When Spellmon stated that he was en route to the law library, Willmore replied, "You're not going no where, and if you keep fuckin [sic] up I'm going to break you up." On or about February 10, 1993, when another inmate told Willmore that he did not know where Spellmon was and asked whether Spellmon was in trouble, Willmore replied, "He filed a grievance on me."

On February 18, 1993, Willmore verbally approved Spellmon's request to pick up some legal documents from an inmate on "K-line," but as soon as Spellmon entered K-line Willmore told him he was "out of place." Spellmon was handcuffed and taken to Lieutenant Dugger, who said that a disciplinary report would be filed against him. Spellmon was then placed in pre-hearing detention. Four days later, Spellmon learned that he was being held in pre-hearing detention because Dugger had written in a logbook, falsely, that Spellmon had "threatened a staff member." The disciplinary report filed by Willmore had charged Spellmon only with being out of place, lying to an officer, and refusing to obey orders. Spellmon pleaded guilty to the out of place charge. On February 23, 1993, Spellmon went before Captain Ellinburgh for his hearing on Willmore's disciplinary report.

Ellinburgh told Spellmon that he was placed in pre-hearing detention for threatening a staff member, a charge for which Plaintiff had not received notice. Ellinburgh disciplined Spellmon with 30 days commissary restriction, a reprimand, and 15 days of solitary confinement. After the hearing concluded, Ellinburgh stated to Spellmon that the punishment of solitary confinement was for threatening a staff member.

On March 25, 1993, Spellmon received from Officer Green a disciplinary report filed by Officer Pierce charging Spellmon with masturbating in public. Plaintiff stated to Green that he had been in the law library during the time in question. Green replied, apparently referring to Pierce, "I don't know what's wrong with that wom[a]n." Spellmon attended a hearing on the Pierce disciplinary report on April 6, 1993. Captain Brock was presiding.[1] Although Spellmon overheard Pierce state to another officer before the hearing that Spellmon was "not the one he's too dark," Pierce nonetheless testified that Spellmon was the offender. Green also testified that he saw Spellmon masturbating, in apparent contradiction with his earlier remark to Spellmon. Spellmon called as a witness Officer Meese, who testified that Spellmon had been in the library for almost four

---

[1] Spellmon alleged that Captain Brock, who was the brother of a defendant named in one of Spellmon's many lawsuits, told Spellmon before the hearing started that Spellmon was "going to be crying" afterwards and that he, Brock, was "going to take everything [Spellmon] got."

4

hours at the time of the alleged offense.  Brock found Spellmon guilty and imposed 30 days commissary restriction, 30 days recreation restriction, a reduction in unit classification, and loss of 535 days of good time.  Spellmon appealed Brock's decision.

On April 9, 1993, Spellmon attended a unit classification hearing before Warden J. Keith Price for a review of his custody status.  Price told him his previous classification and good time would be restored if Meese supported his story in the Pierce matter.  On April 23, 1993, Price presided over another hearing at which Spellmon learned that Major J. Thomas had called him a "pain in the ass" and wanted him placed in close custody "where he belongs."  On May 1, 1993, Meese told Spellmon that no one had spoken to her about the Pierce matter.  On May 3, 1993, Spellmon attended another unit classification hearing, at which Associate Warden Crow told him that his appeal of the Pierce disciplinary report had been denied and that he was being placed in the medium custody section of the prison, which was in lockdown status at the time.  Spellmon remained in lockdown from May 3, 1993, until June 18, 1993, without ever having received notice that he had engaged in conduct which warranted such status.  On May 20, 1993, Spellmon received notice that the Pierce disciplinary report had been expunged from his record, but Spellmon remained in lockdown nevertheless.  On May 25, 1993, Spellmon was again served with the Pierce disciplinary report.  On June 11, 1993, Spellmon was

5

retried on the Pierce charges.  On June 17, 1993, Ellinburgh dismissed the case.

B. <u>Claims Asserted</u>

Spellmon filed this lawsuit on November 23, 1993, against Price, Crow, Thomas, Brock, Ellinburgh, Carroll, Dugger, Pierce, Willmore, and Jones, his case manager, alleging that defendants' actions violated his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments.  Spellmon claims, <u>inter alia</u>, that his constitutional rights were violated by (1) the filing of false disciplinary reports initiated in retaliation for his active use of the courts; (2) his placement in lockdown without notice and a hearing; (3) his continued confinement in lockdown after the relevant disciplinary charges were dismissed; and (4) his punishment for charges not contained in any disciplinary report.

C. <u>District Court Proceedings</u>

The magistrate judge ordered Spellmon to answer interrogatories concerning the factual basis of his complaint. The district court later held a <u>Spears</u> hearing[2] to further develop the factual predicate of Spellmon's claims.  The district court concluded that Spellmon's claims were legally frivolous under 28 U.S.C. § 1915(d) and dismissed the complaint with prejudice.  Among the findings of the district court were (1) all

_____

[2]   See <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985).

disciplinary proceedings comported with procedural due process; (2) the conditions of Spellmon's confinement in lockdown did not violate Eighth Amendment standards; (3) the placement of Spellmon in lockdown was for non-punitive reasons and was within the terms of confinement ordinarily contemplated by a prison sentence; and (4) Spellmon's allegations of retaliation were conclusory, subjective, and speculative.

D. Arguments on Appeal

Spellmon argues on appeal that his claims were improperly dismissed as frivolous because (1) the filing of false disciplinary reports violated his rights under the Fifth and Fourteenth Amendments;[3] (2) his confinement in lockdown violated his rights under the Fifth, Eighth, and Fourteenth Amendments; (3) his punishment for a charge not contained in a disciplinary report violated his rights under the Fifth and Fourteenth Amendments; and (4) his allegations state a valid claim for retaliation.[4]

_____

[3] After careful review of Spellmon's brief and the cases cited therein, we find that Spellmon's argument concerning the filing of false disciplinary charges is based solely on procedural due process and not on any deprivation akin to malicious prosecution. Even if Spellmon were heard to assert such a claim, the Supreme Court held in Albright v. Oliver, 510 U.S. 266 (1994), that malicious prosecution is not actionable as a deprivation of substantive due process under the Fourteenth Amendment.

[4] Spellmon appears to have abandoned all other claims presented below. See Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir. 1995) (claims not briefed on appeal are deemed abandoned).

## II. ANALYSIS

Section 1915(d) authorizes a district court to dismiss an in forma pauperis complaint "if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." 28 U.S.C. § 1915(d)). A complaint is frivolous if "it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in law if it is "based on an indisputably meritless legal theory," such as where defendants are clearly immune from suit or where the complaint alleges infringement of a legal interest which clearly does not exist. Id. at 327. We review a § 1915(d) dismissal for abuse of discretion. Denton v. Hernandez, 504 U.S. 25, 33 (1992).

Spellmon argues that the false accusations of defendants Carroll and Pierce, knowingly made, sufficiently tainted the disciplinary proceedings associated therewith as to deprive him of due process under the Fifth and Fourteenth Amendments. Spellmon does not challenge the district court's finding that the disciplinary proceedings otherwise met constitutional requirements for due process. Because the Fifth Amendment applies only to the actions of the federal government, Morin v. Caire, 77 F.3d 116, 120 (5th Cir. 1996), we limit our analysis to the due process protections of the Fourteenth Amendment.

8

Spellmon relies on United States v. Wallace, 673 F.Supp. 205 (S.D. Tex. 1987), and Morrison v. Lefevre, 592 F.Supp. 1052 (S.D.N.Y. 1984), for the proposition that a prison disciplinary proceeding does not comport with due process where false inculpatory evidence is knowingly introduced through state action.  Both Wallace and Morrison apply to the context of prison disciplinary proceedings the principle articulated in Napue v. Illinois, 360 U.S. 264 (1959), that a state may not knowingly use false evidence to obtain a conviction.  This circuit has previously held that a prisoner's claim that he was charged in a disciplinary report with acts he did not commit did not state a deprivation of due process where the disciplinary proceeding was otherwise fair and adequate.  Collins v. King, 743 F.2d 248, 253-54 (5th Cir. 1984).  The claims in this case do not present any meaningful distinction between the filing of false charges and the presentation of false testimony; the same officer who filed the disciplinary report was also the individual who allegedly testified falsely to the very facts that formed the basis of the report.  Accordingly, Spellmon's claim that he was deprived of procedural due process cannot be sustained under prevailing law.

Spellmon's due process claim is deficient also in a more fundamental respect; namely, the allegations of his complaint do not implicate any constitutionally cognizable liberty interest sufficient to trigger due process protection.  In Sandin v. Conner, 515 U.S. ___, 115 S.Ct. 2293 (1995), the Supreme Court

9

reexamined the analytical framework it created in <u>Hewitt v.</u>
<u>Helms</u>, 459 U.S. 460 (1983), wherein it held that a state may
create protected liberty interests through the use of mandatory
language in statutes and regulations.  In <u>Sandin</u>, in which a
state prisoner challenged his punitive segregation on due process
grounds, the Court held that, although states may create liberty
interests protected by the due process clause, those interests
are

> generally limited to freedom from restraint which,
> while not exceeding the sentence in such an unexpected
> manner as to give rise to protection by the Due Process
> Clause of its own force, nonetheless imposes atypical
> and significant hardship on the inmate in relation to
> the ordinary incidents of prison life.

<u>Sandin</u>, 115 S.Ct. at 2300 (citations omitted).  The Court held
that the prisoner's disciplinary confinement, though punitive,
was not such a "dramatic departure" from the basic conditions of
his sentence as to constitute a protected liberty interest that
would entitle him to the procedural protections set forth in
<u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974).  <u>Sandin</u>, 115 S.Ct. at
2300.  <u>Sandin</u> has considerably narrowed the scope of potential
due process liberty claims that can be brought by prisoners under
the Fourteenth Amendment.  <u>See</u> <u>Orellana v. Kyle</u>, 65 F.3d 29, 32
(5th Cir. 1995), <u>cert. denied</u>, ___ U.S. ___, 116 S.Ct. 736
(1996).

The discipline imposed on Spellmon for possession of
contraband and for masturbating in public consisted of

10

restrictions on recreation, commissary and day room privileges, and a change in custodial status which resulted in his being confined for approximately six weeks in a section of the prison then on lockdown.[5]  Under the standard set forth in Sandin, these changes in Spellmon's conditions of confinement do not implicate a liberty interest sufficient to invoke due process protections. See Luken v. Scott, 71 F.3d 192 (5th Cir. 1995), cert. denied sub nom. Luken v. Johnson, ___ U.S. ___, 116 S.Ct. 1690 (1996).

Spellmon cites Wallace for the proposition that a prisoner has a "liberty interest" in not having false statements, reports, and evidence presented at a disciplinary hearing.  Spellmon's apparent reliance on Wallace to establish the predicate liberty interest is flawed in at least two respects.  First, the knowing presentation of false evidence at an official proceeding does not itself constitute a deprivation of liberty, but rather implicates procedural due process.  See Collins, 743 F.2d at 250 (prisoner's claim that he suffered deprivation of liberty because of untrue and excessive disciplinary charges is complaint about want of procedural due process).  The position that such use of false evidence is simultaneously a substantive deprivation of liberty and a deprivation of due process is untenable.  Second, Wallace

---

[5]  Spellmon's loss of 535 days of good time, imposed for the masturbating in public charge, was restored when this charge was dismissed.  The restoration of Spellmon's good time precludes any claim that he was deprived of a liberty interest in the duration of his sentence.

11

was a criminal case in which defendants were charged pursuant to 18 U.S.C. § 241 with conspiracy to deprive a prisoner of his constitutional rights, not a prisoner action under 42 U.S.C. § 1983. As the court pointed out in <u>Wallace</u>, section 241 does not require proof of an actual deprivation of rights that would afford a private cause of action under section 1983. <u>Wallace</u>, 673 F.Supp. at 206.

Spellmon also contends that his Fourteenth Amendment rights were violated when he was deprived of notice and a hearing before being placed in lockdown; when he was not removed from lockdown after the disciplinary case was dismissed; when he was subjected to a lockdown instituted in response to the actions of other inmates;[6] and when he was disciplined with solitary confinement for "threatening a staff member" despite the fact that this charge was not contained in any disciplinary report. Each of these claims is premised upon a liberty interest in freedom from disciplinary segregation which is not constitutionally cognizable in the wake of <u>Sandin</u>.

---

[6] Spellmon nominally asserts that his confinement in lockdown, absent any behavior on his part warranting such close custody, also violates his rights under the Eighth Amendment. The body of Spellmon's argument, however, properly focuses on due process concerns, as his contention is properly analyzed under the Fourteenth Amendment. Even if this claim were cognizable under the Eighth Amendment, Spellmon's confinement in lockdown was not so lacking in penological interest or otherwise in contravention of contemporary standards of decency as to rise to the level of a constitutional violation. <u>See</u> <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346-47 (1981).

Finally, Spellmon argues that he has alleged a valid claim for retaliation under the First and Fourteenth Amendments. Spellmon contends that all the acts of defendants alleged in his complaint were motivated by retaliation, primarily in response to his litigation activities. Spellmon points to his allegation that, eight days prior to filing a false disciplinary report against Spellmon, Willmore stated to an inmate who asked if Spellmon was in trouble, "He filed a grievance on me." Spellmon also contends that support for his retaliation claim lies in his allegations that Thomas wanted him confined in close custody because he was a "pain in the ass," that Carroll arbitrarily terminated his law library access, and that Carroll initiated a false report upon being disappointed that he didn't find marijuana or cash in Spellmon's cell.

The law is clearly established in this circuit that "a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." Woods v. Smith, 60 F.3d 1161 (5th Cir. 1995), cert. denied sub nom. Palermo v. Woods, ___ U.S. ___, 116 S.Ct. 800 (1996). Prisoner claims of retaliation, however, must be "carefully scrutinize[d]." Id. at 1166. "'Claims of retaliation must . . . be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.'" Id. (quoting Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994), cert.

13

denied, ___ U.S. ___, 115 S.Ct. 1371 (1995)).  An inmate bringing a retaliation claim "must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred.  This places a significant burden on the inmate." Id. (citations omitted).

The district court did not expressly consider any allegations other than Carroll's dissatisfaction with the cell search when it concluded that Spellmon's allegations of retaliation were inadequate.  Having considered all allegations which Spellmon argues on appeal constitute a sufficient legal basis for his retaliation claim, we conclude that the district court's dismissal was appropriate.

We note initially that Spellmon's general allegation that he had a reputation throughout the Texas Department of Criminal Justice as a "writ-writer" is, without more, insufficient to establish that the adverse disciplinary actions would not have been taken but for the retaliatory motive.  As to Willmore, Spellmon's only other relevant factual allegation concerns Willmore's comment to another prisoner about Spellmon filing a grievance against him.  The mere fact that this isolated remark was made eight days prior to Willmore's filing of the allegedly false disciplinary report does not give rise to a reasonable inference that the disciplinary report was motivated by retaliation for the grievance.  Neither does Carroll's alleged

14

threat to file a report against Spellmon if Spellmon filed a grievance against him, made three days <u>after</u> Carroll filed the possession of contraband disciplinary report, support Spellmon's claim that any action actually taken by Carroll was retaliatory. Spellmon's contention that Carroll filed the disciplinary report because he was disgruntled about not finding any marijuana or cash in Spellmon's cell is not only pure speculation, but also fails to assert that the alleged retaliation was in response to the exercise of a constitutional right.  Spellmon's argument concerning Thomas's desire to place him in close custody is also inadequate to support a retaliation claim because Thomas's alleged comments are not alleged to have resulted in any adverse action.

III. <u>CONCLUSION</u>

For the foregoing reasons, the judgment of the district court is AFFIRMED.