Claude Richard COOK, Plaintiff,

v.

The BOARD OF EDUCATION FOR the COUNTY OF LOGAN; Sam P. Sentelle; James J. Barber; Janet Doss; Robert L. Gilliam; J. Naaman Godby; Kenneth Zigmond; and Carmie Vance, Defendants.

Civ. A. No. 2:86–0581.

United States District Court, S.D. West Virginia, Charleston Division.

Oct. 19, 1987.

James M. Cagle & Charles R. Garten, Cagle & Garten, Logan, W.Va., for plaintiff.

Cheryl I. Connelly, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, W.Va., for Board of Educ., et al.

James J. MacCallum, Shaffer & Shaffer, Madison, W.Va., for Carmie Vance.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending before the Court is the motion of some of the Defendants for summary judgment. The motion had earlier been denied, but the Court, by Order entered August 5, 1987, allowed the Defendants to renew their motion. The motion has been fully briefed and the Court now deems the matter mature for decision.

### I. *Background*

The events giving rise to this litigation relate to a personnel (and perhaps personality) dispute in the school system of Logan County, West Virginia. The Plaintiff, Claude Richard Cook, was a school teacher and the head basketball coach at Logan High School. In December of 1984, he and fellow teacher Jeffrey Massey (also a coach) were suspended from employment by Defendant Sam P. Sentelle, Superintendent of Schools for Logan County. Cook and Massey were accused of beating the son of Defendant Carmie Vance. The other individual Defendants, James J. Bar-ber, Janet Doss, Robert L. Gilliam, J. Naaman Godby, and Kenneth Zigmond, were members of the Logan County Board of Education at the time Cook and Massey had their difficulty with the Board. The Board itself is also named as a Defendant.

Cook sues the Defendants under the provisions of 42 U.S.C. § 1983 for violating his constitutional rights and under 42 U.S.C. § 1988 for conspiring to violate those rights. He also sues under the state law theories of civil conspiracy and malicious prosecution.

In examining of the record compiled by the parties, the Court finds the following facts to be essentially undisputed:

1. On December 20, 1984, Defendant Carmie Vance signed two complaints before Johnny Mendez, Magistrate of Logan County. Vance alleged that his son, Ronnie Vance, was beaten by Cook and Massey.

2. On December 21, 1984, Dr. Sam P. Sentelle, Superintendent of Schools for Logan County, issued letters of suspension to Cook and Massey. Effective on that date, they were suspended with pay.

3. On December 27, 1984, the Honorable Naaman Aldredge, Judge of the Circuit Court of Logan County, entered an order reinstating Cook subject to a hearing before the Board on or before January 4, 1985. The Board was scheduled to meet in regular session on January 10, 1985.

4. The Board met in special session on January 4, 1985, from 7:30 a.m. to 5:10 p.m. Cook, by counsel, made a presentation to the Board. At the conclusion of the hearing, the Board voted three to nothing, with two abstentions, to suspend Cook and Massey with pay.

5. By letters dated January 5, 1985, to Cook and Massey, Sentelle confirmed the suspension. These letters, as well as the initial suspension letters of December 21, 1985, contained the following clause:

"During the time this suspension is in effect, you are hereby directed to refrain from any professional association with public school students. You are further directed to remain away from public

school property unless you have specific prior approval in writing from an appropriate school official. A violation of these directives will represent insubordination and as such grounds for disciplinary action."

6. On March 1, 1985, Sentelle sent a letter to Cook accusing him of violating the conditions of his suspension. Specifically, Sentelle accused Cook of being on school property during school hours without specific prior approval from a school official. He told Cook that he was instructing the principal of Logan High School to initiate formal charges. No action, however, was immediately taken.

7. By letters dated August 6, 1985, Sentelle notified Cook and Massey that he would recommend to the Board that it suspend their pay for the upcoming school year. He informed them of their right to appear at the August 15, 1985, Board meeting and contest that action.

8. Cook appeared at the August 15, 1985, Board meeting. With the assistance of counsel he presented his objection to the proposed pay suspension. The Board tabled the matter.

9. At its regularly scheduled meeting of October 29, 1985, the Board voted to suspend the compensation of Cook and Massey.

10. On October 31, Sentelle confirmed the Board action in letters to Cook and Massey.

11. On December 16—19, a trial was held in Wyoming County Magistrate Court on the complaint filed by Carmie Vance. On December 19, 1985, a verdict was returned finding Cook and Massey not guilty.

12. By a letter dated January 10, 1986, Sentelle notified Cook of certain charges and informed him that a hearing would be held before the Board on January 23, 1986. The letter charged Cook with (1) assaulting and battering two students under his supervision; (2) making threats and provocative gestures to another teacher on three different occasions; (3) speaking with basketball players in and around a school dressing room in violation of his suspension terms; (4) being on school property during school hours in violation of his suspension terms; and (5) generally having poor standing in the community.

13. Cook did not request a hearing before the Board and did not attend the January 23, 1986, meeting. The Board voted to terminate Cook's employment.

14. Either on January 15, 1986, or January 29, 1986,—there is a dispute in the record—Cook requested a "Level 4" hearing before the Education Employees Grievance Board.

15. After two days of testimony, Grievance Board Hearing Examiner Leo Catsonis ordered on April 7, 1986, that Cook be reinstated with back pay and benefits.

16. Cook voluntarily severed his employment on July 9, 1986. This action was filed on May 15, 1986.

## II. *Discussion*

The motion before the Court is limited in scope. The Board and Carmie Vance are not parties to the motion. It is made by the five Board members and the Superintendent of Schools. Those Defendants move for judgment in their individual capacities only. The basis of their motion is the doctrine of qualified immunity.

### A. *Qualified Immunity*

The Defendants[1] argue that they are entitled to immunity from personal liability for actions taken in their official capacities as school officials. That immunity, they concede, is not absolute, but rather, is qualified. In *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), the Supreme Court held that school officials are entitled to a form of immunity. The immunity recognized by the Court was qualified in that "the school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of

---

1. For the sake of simplicity, the Court will occasionally refer to the five Board members and the Superintendent of Schools, the moving Defendants, as "the Defendants."

the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student." *Id.* at 322, 95 S.Ct. at 1001.

The standard set forth in *Wood* had elements of both objective and subjective tests of good faith. Because of the alternative, subjective test, summary judgment was not often appropriate within the context of these types of suits. Whether someone acted with malicious intent can seldom be ascertained summarily. Therefore, determining that "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery", the Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), opted for a strictly objective test.[2] The Court held "that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738.

The *Harlow* Court directed that on summary judgment a court was to determine not only the currently applicable law, but also whether that law was "clearly established." If the law was unsettled at the time the official acted, he cannot be saddled with liability. An official is not charged with anticipating future developments of the law.

The Defendants here do not make any claims about the unsettled nature of the law. Their position is that they did not violate Cook's constitutional rights as the law then and now defines those rights.

B. *Issue Preclusion*

Before examining those constitutional rights which Cook claims were abridged, the Court must first consider another issue which Cook has raised: issue preclusion or collateral estoppel.

Cook argues that the Court must give preclusive effect to the findings of the state hearing examiner. The examiner handed down his decision on April 7, 1986, holding that Cook had been improperly discharged. The Board did not appeal that decision; thus, it became final. Cook submits that the following "findings" were made by the examiner: That Cook's pay was suspended on October 29, 1985, without prior notice to him; that Cook was the subject of selective disciplinary treatment; that due process requires that charges against an employee be made timely and in good faith; that the evidence against Cook to substantiate the charges upon which he was dismissed was insufficient as a matter of law; that there was no statutory authority for the superintendent of schools to impose restrictions upon the activities of a suspended employee which infringe upon the employee's constitutional rights; and that the dismissal of Cook was arbitrary and capricious as a matter of law.

The Court agrees that in this Section 1983 action it must give preclusive effect to findings of fact made by a state administrative agency. *University of Tennessee v. Elliott,* —— U.S. ——, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). As to conclusions of law, however, the Court disagrees. The state hearing examiner was sitting to decide issues entirely different from those now before this Court. Principally, the hearing examiner's purpose was to determine if a public employee had been properly treated under state law. He determined that state guidelines were not followed and that Cook should be reinstated.

This Court sits to determine if constitutional torts have been committed. The result of that determination could be the im-

---

**2.** The *Harlow* court rationalized that "[r]eliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Id.* at 818, 102 S.Ct. at 2738. In *Harlow* the Supreme Court was addressing the immunity to be accorded a federal official sued directly under the Constitution. The holding is applicable to state officials and section 1983, though, because the Court does not draw a distinction between immunity for state and federal officials. *Id.* n. 30.

position of monetary damages against public officials. This Court's polar star is federal law. *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980). With the source of the law being different, and with the result being markedly different, this Court cannot defer to the conclusions of law made by the hearing examiner. As to true findings of fact, the Court will defer. As to the legal effect of those facts within the context of the issues of this litigation, the Court will not defer.

Also, the Court believes that there is some question as to whether these Defendants had a fair opportunity to litigate the issues before the hearing examiner. The individual Defendants were not parties to that proceeding; they were not represented by counsel.[3] They had no personal stake in the outcome of the proceeding. Hence, the individual Defendants had no incentive to vigorously press their positions. Moreover, they had no standing to make their positions known. In essence, Cook seeks to do the impermissible: He seeks to bind these Defendants to decisions they did not litigate.

### C. *Procedural Due Process*

Cook contends that the acts of the Defendants denied him procedural due process. In addressing this contention, the Court accepts as well settled the proposition that certain substantive rights—life, liberty and property—cannot be deprived except pursuant to constitutionally adequate procedures. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). Also well settled—and the Defendants do not dispute this—is that a tenured school employee, such as Cook, has a property interest in his employment. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Hence, the question essentially becomes one of what process is due.

The Supreme Court has held that the specific dictates of due process are flexible.

It has articulated three distinct factors which generally should be considered:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). These factors go to the quality or degree of the due process. The courts also have also spoken quite often on the components of due process. Although the Supreme Court has said that the essential requirements of due process are notice and an opportunity to be heard, *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495, one commentator has isolated seven separate components to due process:

> "(1) Adequate notice of the charges or basis for government action; (2) a neutral decision-maker; (3) an opportunity to make an oral presentation to the decision-maker; (4) an opportunity to present evidence or witnesses to the decision-maker; (5) a chance to confront and cross-examine witnesses or evidence to be used against the individual; (6) the right to have an attorney present the individual's case to the decision-maker; (7) a decision based on the record with a statement of reasons for the decision."

J. Nowak, R. Rotunda & J. Young, *Constitutional Law,* 555–56 (1984). Cook's complaints here go to three of those components: notice, a hearing and an impartial decision-maker.

### 1. *Notice*

The Court has reviewed Cook's allegations with regard to notice and finds them to be without merit. In particular, Cook alleges that notice was insufficient with

---

**3.** The record does not reflect if even the Board was represented by counsel before the hearing examiner.

respect to the suspension of his employment in December, 1984, the suspension of his pay in October, 1985, and the termination of his employment in January, 1986.

■ When Cook was suspended initially, on December 21, 1984, Superintendent Sentelle notified him of the suspension, the reasons therefor, and the date of a hearing. He did such by hand delivering a letter to Cook's residence. Likewise, Cook was notified by letter on August 7, 1985, that Sentelle would recommend the suspension of his pay to the Board. He was notified of his right to appear at the August 15, 1985, Board meeting to protest that action. He did appear. Hence, Cook was given notice and an opportunity to be heard on the matter. That the Board tabled the matter and reconsidered it at a later meeting does not create a constitutional violation. The purpose of notice is to give a party opportunity to express himself on the issues; once that occurs, notice in advance of decision is unnecessary.[4]

■ The hearing examiner determined that Cook was not given proper notice of the charges which led to Cook's dismissal in January of 1986. The notice which the Board failed to give, however, was with respect to the underlying charges. In other words, the hearing examiner believed that the Board should have informed Cook of the incidents in question closer in time to when they occurred. While such a failing might be counter to policy, and entitle an employee to reinstatement, the Court does not believe that it was a violation of constitutional guarantees to notice and an opportunity to be heard. Precisely because the Board gave notice of what it was relying upon, Cook was able later to attack those grounds and gain reinstatement. It is important to remember that Cook did not attend the hearing scheduled on the charges. If he had, perhaps he could have successfully refuted those charges at that time.

## 2. *Hearing*

■ The Plaintiff seeks to make a constitutional case out of the failure of the Defendants to give him a hearing prior to suspending him in December of 1984. That was the only occasion on which a hearing was not held prior to action being taken against Cook. The Court believes that the decision of the school administration not to hold a hearing was constitutionally permissible.

In considering the factors set forth in *Mathews, supra,* the Court finds the following facts to weigh against the necessity for a hearing. First, a hearing was scheduled soon after the suspension.[5] Cook thus had the opportunity to challenge his suspension while the charges against him were fresh. The Supreme Court has approved interim suspensions, pending a prompt judicial or administrative hearing, when the state's interest is in jeopardy. *Barry v. Barchi,* 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979). Second, the charges against Cook were serious. He was accused of beating a student. The school administration is charged with insuring the safety of its students. Also, in the volatile sphere of school-parent relations, perception is often as important as reality. The suspension of Cook undoubtedly placated the apprehension of other parents, well-founded or not. Third, the suspension of Cook was with pay. In *Loudermill, supra,* the Supreme Court opined that "in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay." 470 U.S. at 544–45, 105 S.Ct. at 1495. The problem which the Court referenced was prehearing deprivation to the accused employee. By suspending with pay, the employer can protect its interest without unduly interfering with the employee's means of support. Hence, the deprivation is lessened.

---

**4.** Cook does not present any evidence that the Board received additional testimony during the meeting at which it voted upon the pay suspension.

**5.** The Court is not influenced by the fact that the Board was ordered by the Circuit Court of Logan County to hold a hearing for Cook on January 4, 1985. This date preceeded by only one week the date voluntarily scheduled by the Board for a possible hearing on the matter.

In short, the Court concludes that Cook's right to a hearing was not abridged.

### 3. *Impartial Decision Maker*

■] Cook also claims that he was denied his right to present his case to an impartial decision maker. As to this contention, the Court finds genuine issues of material fact. Hence, the Court denies the Defendants' motion for summary judgment with regard to this issue.

The law is settled that due process requires an impartial decision maker. *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). Without deciding the issue, the Court would note only that Cook has produced evidence, prior to the completion of discovery, that members of the Board harbored malice toward him. Also, the son of one Board member replaced Cook as basketball coach at Logan High School. That fact does not favor neutrality or fairness. In *Hortonville Joint School District No. 1 v. Hortonville Education Association*, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976), the Supreme Court, after concluding that the school board in that case was *not* precluded from disciplining striking teachers, stated that "the teachers did not show, and the Wisconsin courts did not find, that the Board members had the kind of personal or financial stake in the decision that might create a conflict of interest, and there is nothing in the record to support charges of personal animosity." *Id.* at 491–92, 96 S.Ct. at 2314.

In sum, the incomplete state of the record here does not allow the Court to state with certainty that Cook had an impartial decision maker.

### D. *Freedom of Speech*

Cook claims that the conditions of his suspension violated his constitutional right to freedom of speech. During his suspension, Cook was prohibited from being on school property and of having any professional association with students. These conditions were imposed by Superintendent Sentelle in his letter of suspension dated December 21, 1984.

Because the Board was not regulating the content of the Plaintiff's speech per se, the Court believes that Cook's claims in regard to free speech are better analyzed in terms of freedom of association. The Board did not prohibit Cook from expressing himself on any subject. It was not punishing him for expressing his opinion. Indeed, this is not the usual case where an employee is punished for criticizing his employer in public. The employee here, Cook, was prohibited from associating with a certain class of individuals in a certain manner. The record is silent, as can be expected, as to what Cook would have said to members of that class. Hence, the Court prefers to address Cook's claim within the context of freedom of association.

### E. *Freedom of Association*

The Court notes initially that this is an area upon which the Court should be wary to intrude. Decisions respecting personnel are ones to be made by the duly elected county officials. Within limits, a federal court should not meddle with the decisions of the Board. The Supreme Court has said it best:

> "[T]he Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs. This includes the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch. Prolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the work place, foster disharmony, and ultimately impair the efficiency of an office or agency."

*Arnett v. Kennedy*, 416 U.S. 134, 168, 94 S.Ct. 1633, 1651, 40 L.Ed.2d 15 (1974) (Powell, J., concurring).

■ With the above-outlined principles in mind, the Court rejects Cook's claim that the Defendants interfered with his constitutional right of association. It is true that he was directed not to communicate with students. In balancing the interests of Cook and the school administration, however, the Court finds no deprivation of a constitutional magnitude. The interest of

the school administration was compelling. It had an interest in seeing that the morale and effectiveness of Cook's replacement was not undermined. The specter of a former authority figure competing with his replacement for the affection and respect of the students justified the restrictions imposed. This is so regardless of the odds that Cook would have been a disruptive influence. The school administration was entitled to impose a reasonable, prophylactic restriction.

The Court does not sit to second guess the school board in the management of its employees. Superintendent Santelle obviously believed that it would be disruptive to have a suspended school teacher coming on the school grounds or professionally associating with students.[6] The record does not reflect whether the restrictions were imposed pursuant to established policy or whether they were crafted peculiarly for Cook. In any event, the prophylactic purpose of the restrictions is clear: The Superintendent sought to preclude further altercations.

### F. *Equal Protection*

Cook's claim that he was denied equal protection of law can be dealt with rather summarily. In short, the facts here do not support an equal protection claim. It is basic to an equal protection argument that there be legislative classifications of persons which are treated differently under the law. *United States v. Horton*, 601 F.2d 319, 323–24 (7th Cir.1979). Cook does not allege the existence of any legislative linedrawing. Without state-authored classifications, he has no claim for denial of equal protection of the laws within the intent and meaning of the Fourteenth Amendment.

### G. *Pendant Claims*

The Defendants, in their motion for summary judgment, do not directly address the pendant state claims of Cook. He pursues two theories under state law: malicious prosecution and civil conspiracy. Perhaps the Defendants believed that if the claims made under federal law were dismissed, the state law claims would then be dismissed for lack of jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In any event, with a portion of the procedural due process claim still being extant, the state law claims also continue.

### III. *Conclusion*

For the reasons set forth above, the Court rules as follows on the Defendants' motion for summary judgment:

1. Grants the Defendants' motion for summary judgment on the Plaintiff's claim of denial of procedural due process with regard to notice;

2. Grants the Defendants' motion for summary judgment on the Plaintiff's claim of denial of procedural due process with regard to a hearing;

3. Denies the Defendants' motion for summary judgment on the Plaintiff's claim of denial of procedural due process with regard to an impartial decision maker;

4. Grants the Defendants' motion for summary judgment on the Plaintiff's claim of denial of his freedom of speech;

5. Grants the Defendants' motion for summary judgment on the Plaintiff's claim of denial of his right to freedom of association; and

6. Grants the Defendants' motion for summary judgment on the Plaintiff's claim of denial of equal protection of the laws.

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to counsel of record.

---

**6.** As to the former, the Court notes that while the threats made against the Plaintiff in regard to the visit to school property are a part of the entire fabric of this case, they are not actionable in and of themselves.