**Harry DUCHESNE, Plaintiff–Appellee,**

v.

**Wylie L. WILLIAMS, Jr., and the City of Inkster, a municipal corporation, Defendants–Appellants.**

**No. 86–1017.**

United States Court of Appeals, Sixth Circuit.

Reargued March 30, 1988.

Decided June 20, 1988.

Rehearing Denied July 22, 1988.

---

6. Kelley, in his two *pro se* briefs, raises several additional issues. Upon review, we conclude that all are without merit.

Marilyn Madorsky (argued), Provizer, Eisenberg, Lichtenstein & Pearlman, P.C., Southfield, Mich., for defendants-appellants.

Susan E. Morrison (argued), Bloomfield Hills, Mich., for plaintiff-appellee.

Before ENGEL, Chief Judge *, LIVELY, KEITH, MERRITT, KENNEDY, MARTIN, JONES, KRUPANSKY, WELLFORD, MILBURN, NELSON, RYAN, BOGGS and NORRIS, Circuit Judges.**

MERRITT, Circuit Judge.

This procedural due process case brought under § 1983, Title 42, U.S.Code (1982), presents this single issue on appeal: Does *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed. 2d 494 (1985), *aff'g,* 721 F.2d 550 (6th Cir. 1983), require that a discharged municipal employee receive a pretermination hearing *before a neutral and impartial decisionmaker* rather than before the supervisor who fired him? The District Court, and the panel decision of our Court which has now been vacated by the grant of *en banc* review (see Rule 14, Rules of the Sixth Circuit), held that *Loudermill* requires a pretermination hearing before a neutral decisionmaker, instead of simply giving the employee the right to respond to his supervisor in order to rebut or explain the reasons given for the discharge. We accept the reasoning of the Fourth and Fifth Circuits in *Garraghty v. Jordan,* 830 F.2d 1295, 1302 (4th Cir.1987) ("a pre-deprivation proceeding need not be a full evidentiary hearing with witnesses and a neutral decision maker"), and *Schaper v. City of*

*Huntsville,* 813 F.2d 709, 715 (5th Cir.1987) (same), that a right of reply before the official responsible for the discharge is the entitlement contemplated in *Loudermill.* We therefore reverse.

Plaintiff worked as Chief Building Inspector for the City of Inkster, Michigan, for more than a year until his termination on November 18, 1983. Defendant Williams, the City Manager, informed plaintiff on September 12, 1983, that his employment would be terminated for several reasons, including the fact that he had engaged in "improper conduct ... before City Council by impugning the integrity of the City Manager, City Council, and other independent contractors." App. 306. Plaintiff had told Council members the week before that the City Manager had approved of payments for repair work on the city ice arena and that the City should not pay the bill because the work did not conform to specifications. App. 383.

Upon receiving notice of termination, plaintiff's lawyer wrote the City Council requesting a pretermination due process hearing. The City agreed but initially refused to reinstate him pending the hearing's outcome. Plaintiff immediately filed a complaint against the City Manager and the City in the District Court alleging federal due process and First Amendment deprivations, and pendent state law claims. The City then agreed to pay plaintiff's wages and benefits pending the hearing. The City Manager immediately gave plaintiff a written description containing numerous reasons for the discharge. A pretermination hearing took place on October 6, 17, and November 10, at which plaintiff, as he had requested, was represented by legal counsel, was allowed to present witnesses supporting his theory that the City did not have just cause to terminate him and was allowed to cross-examine the City's witnesses. App. 12. Over plaintiff's objection, the City Manager presided over the hearing; he also testified against plaintiff. On November 18, 1983, the City Manager reaffirmed the discharge.

---

* The Honorable Albert J. Engel assumed the duties of Chief Judge effective April 1, 1988.

** The Honorable Ralph B. Guy recused himself from participation in this appeal.

Plaintiff then filed a motion for partial summary judgment in his federal lawsuit arguing that the pretermination hearing he received did not comply with federal procedural due process requirements. Although plaintiff conceded that the City gave him the pretermination hearing he had requested, he argued that since the City Manager was both a witness and the decisionmaker, the hearing did not comply with due process. He explained that the hearing he received was not the "fair and impartial hearing required by the Constitution," and "defendants clearly violated his rights to due process by not affording him an impartial decisionmaker at his discharge hearing." App. 304, 362.

The District Court required both parties to submit supplemental briefs in light of the Supreme Court's then recent pronouncement in *Loudermill*. The District Court then granted plaintiff's motion and issued an injunction requiring as a matter of federal due process a trial-type pretermination evidentiary hearing before a neutral decisionmaker. It concluded that under Michigan law, plaintiff had a sufficient "property interest" in his job to trigger the *Loudermill* due process procedures and that under *Loudermill*, and previous federal cases, plaintiff was entitled to a pretermination hearing before a "neutral decisionmaker." This appeal followed. The defendants contend here that the plaintiff had neither a "property interest" in his job, nor—if such a property interest does exist—the right to a hearing before an impartial judge.

We do not reach the "property interest" issue, a complex problem as yet unresolved in Michigan law,[1] for it is clear to us that,

assuming such a property interest does exist, the procedures followed at plaintiff's hearing provided all the process that was due under *Loudermill*. Interpreting *Loudermill*, the Fourth and Fifth Circuits in *Garraghty* and *Schaper, supra*, have recently squarely held that the property interest created in the normal government job covered by a civil service system, which creates a "just cause" requirement for discharge, does not entitle the employee to an impartial judge at the pretermination "right-of-reply" hearing. The right to respond before the official responsible for the discharge is sufficient. We find no Court of Appeals holdings to the contrary. Some District Courts have held otherwise. *Rosario Torres v. Hernandez Colon*, 672 F.Supp. 639, 652–53 (D.P.R.1987) (neutral decisionmaker required in pretermination hearing); *Cook v. Bd. of Educ.*, 671 F.Supp. 1110, 1116 (S.D.W.Va.1987) (same); *Salisbury v. Housing Auth.*, 615 F.Supp. 1433, 1438–41 (E.D.Ky.1985).

This Court observed in our decision by Judge Timbers in *Loudermill* that the functions of a full adjudicatory, adversary, post-termination hearing and of a limited "right-of-reply" pretermination hearing are different: "[T]he fact that Ohio provided appellants in this case with full evidentiary hearings [with an impartial judge] after termination does not suggest that no other process was due." 721 F.2d at 560. The purpose of the later formal hearing is to adjudicate facts and to formulate and decide on the legal principles applicable to the circumstances. The purpose of the pretermination presentation to the supervisor is different: "[I]f they [the employees] had

---

1. Plaintiff contends that a series of state laws and local ordinances create a property right in his continued employment. He explains that a City ordinance adopting the Building Officials and Code Administrators International, Inc., Basic Building Code (BOCA Code), and the BOCA Code itself, create a property right in his employment. He also claims a contractual property right in his employment under *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980). Defendants contend that plaintiff has no property right in his job because the City adopted the State Construction Code Act, rather than the BOCA Code, and

the City Charter provides that officials in plaintiff's employment class are employees at will. Also, defendants argue that even if the City adopted the BOCA Code, it does not apply to plaintiff.

Without resolving the *Toussaint* question, the District Court found that the City ordinance and the BOCA Code create a property right in plaintiff's employment, even though the BOCA Code does not explicitly indicate that it controls government employer/employee relations. Hearing Tr., February 17, 1984, 19–20. Under our disposition of this appeal, we need not resolve these complicated state law issues.

been afforded some limited right to challenge the impending discharges, the discharge order might well have been rescinded" because they would have had "an opportunity to present their side of the case" at an early stage to the official responsible for the discharge. *Id.*

The Supreme Court accepted this reasoning in its opinion reviewing *Loudermill.* The Court said that before termination the employee should receive "notice" and the opportunity to "respond." The purpose is not to "definitively resolve the propriety of the discharge," as would be the case at the later formal hearing. 470 U.S. at 545, 105 S.Ct. at 1495. Rather, the hearing's purpose is limited:

> It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.

*Id.* at 545–46, 105 S.Ct. at 1495.

The Court narrowed the essential ingredients of this pretermination hearing to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546, 105 S.Ct. at 1495. The Court also looked to the municipal employer's interest, emphasizing that "[t]o require more than this *prior to termination* would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.* (emphasis added). This reading of *Loudermill* is reinforced by comparing Justice Marshall's concurring opinion with the majority opinion. The *Loudermill* majority deliberately chose not to include within its definition of pretermination hearing rights the panoply of trial-type hearing rights advocated by Justice Marshall, which included a full evidentiary, adversary, adjudicatory hearing with an impartial judge. *Id.* at 548, 105 S.Ct. at 1496 (Marshall, J., concurring in part and concurring in the judgment).

As the Fourth Circuit recognized in *Garraghty,* 830 F.2d at 1300, this reading of *Loudermill* is also reinforced by the fact that in *Loudermill* the Court suggested that its decision was an application of the principle announced in *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), a case holding that a public school student must be given a presuspension limited hearing before the "disciplinarian" so that "the *disciplinarian* may informally discuss the alleged misconduct with the student," thus affording the student adequate "notice" and "an opportunity to explain his version of the facts." 419 U.S. at 581–82, 95 S.Ct. at 740 (emphasis added). In *Loudermill* the Court explained what it meant by giving "some opportunity for the employee to present his side of the case" by engaging in an extended discussion of *Goss v. Lopez,* a discussion which begins:

> Even where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity *to invoke the discretion of the decisionmaker* is likely to be before the termination takes effect. *See Goss v. Lopez,* 419 U.S. at 583–84 [95 S.Ct. at 740–41].

470 U.S. at 543, 105 S.Ct. at 1494 (emphasis added). Note that the Court uses the word "decisionmaker," which means the official responsible for the discharge. If there were any lingering doubt about the Court's meaning, it is resolved by the footnote immediately following its citation to *Goss v. Lopez.* The footnote specifically states that the Court contemplates a limited *Lopez*-type hearing before the "employer":

> The point is that where there is an entitlement, a prior hearing facilitates the consideration of whether a permissible course of action is also an appropriate one. This is one way in which providing "effective notice and informal hearing permitting the [employee] to give his version of the events will provide a meaningful hedge against erroneous action. At least the [employer] will be alerted to the existence of disputes about facts and arguments about cause and effect.... [H]is discretion will be more informed and we think the risk of error substantially reduced." *Goss v. Lopez,* 419 U.S. at 583–84 [95 S.Ct. at 740–41].

470 U.S. at 543–44 n. 8, 105 S.Ct. at 1494 n. 8 (bracketed words and elipsis in original).

The differences in the function and purpose of the pre- and post-termination hearings become clearer when we contemplate the opposing claim of an employee who has not prevailed in a full adjudicatory, trial-type, pretermination hearing. That employee's claim would be that a formal pretermination adjudicatory hearing before an impartial judge is not a sufficient due process substitute for the right to correct or modify the mistaken impressions of the supervisor who has threatened his discharge. He would argue along the lines discussed in our opinion in *Loudermill* and the Supreme Court's reasoning in *Lopez* and *Loudermill* that his supervisor's more concrete understanding and familiarity with the nature of the employee's job and conduct, his supervisor's potential willingness to forgive or give another chance, the informality of the "hearing" before the supervisor, and the lack of adversary formality and contentiousness associated with lawsuits have certain advantages over the formal adjudicatory hearing. Were we to adopt the District Court's rule, we would not be surprised to find an employee, discharged after a formal pretermination hearing, arguing that he has not been allowed to "invoke the discretion" of his employer and that he would have been retained if he could have talked to his supervisor first.

We acknowledge that there may be cases—perhaps this is one of them—in which the supervisory official is so biased that the *Loudermill* "right-of-reply" process is meaningless. The full, post-termination, adversary, trial-type hearing will serve to ferret out bias, pretext, deception and corruption by the employer in discharging the employee. The adversary processes employed in an adjudicatory, post-termination hearing controlled by an impartial judge lend themselves to proving wrongful conduct by the employer. The limited, "right-of-reply" pretermination hearing, as defined in *Loudermill*, is designed "to invoke the employer's discretion," his sense of fairness and mutual respect, his willingness to reconsider. It is not designed or well-adapted to uncover the employer's bias or corrupt motivation. For a more extended discussion of this point, see Judge Kiser's well-considered opinion in *Crocker v. Fluvanna County Board of Public Welfare,* 676 F.Supp. 711, 715–17 (W.D.Va.1987),[2] and Professor Davis' exhaustive discussion of the differences in the purposes of the "Trial–Type Hearing" (Ch. 12) and "Fair Informal Procedure" (Ch. 13) in II K. Davis, *Administrative Law Treatise,* 405–522 (2d ed. 1979).

For these reasons the judgment of the Court below is reversed, the injunction is vacated and dissolved, and the case is remanded with instructions to dismiss the plaintiff's *Loudermill* pretermination claim of deprivation of property without procedural due process, as discussed above, and for further proceedings on other constitutional and pendent state claims.

WELLFORD, Circuit Judge, concurring.

As an original member of this court's panel in *Loudermill v. Cleveland Board of Education,* 721 F.2d 550 (6th Cir.1983), *aff'd* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed. 2d 494 (1985), I am in accord with Judge Merritt's analysis of *Loudermill* as it relates to the issues of this case. I write separately to state my original concern about the issue of mootness, but I note that plaintiff's counsel at oral argument took the position that not all the issues involved were moot. I agree not only with the

---

2. Judge Kiser begins his discussion with the following quotation from Justice Powell on the question of an impartial judge at a pretermination hearing:

In most cases, the employee's supervisor is the official best informed about the "cause" for termination. If disqualification is required on the ground that the response of the supervisor could not be wholly impartial, the removal procedure would become increasingly complex. And, in fact, a "mini trial" would be necessary to educate the impartial decisionmaker as to the basis for termination. *Arnett v. Kennedy,* 416 U.S. 134, 170 n. 5, 94 S.Ct. 1633, 1652 n. 5, 40 L.Ed.2d 15 (Powell, J., concurring in part and concurring in the result in part), quoted in *Crocker,* 676 F.Supp. at 716.

result reached and Judge Merritt's reasoning in reaching that result, but would also note my disagreement with plaintiff's argument that BOCA requirements equate with or set out the constitutional due process requirements involved in this discharge.

DAVID A. NELSON, Circuit Judge, concurring.

I concur in the judgment and in the opinion Judge Merritt has written for the court, but write separately to record my understanding that Michigan law does in fact provide for the sort of "full, post-termination, adversary, trial-type hearing" that, as Judge Merritt has said, would "serve to ferret out bias, pretext, deception and corruption by the employer in discharging the employee."

In *Hawkins v. Common Council of Grand Rapids*, 192 Mich. 276, 158 N.W. 953 (1916), the Michigan courts nullified, on the ground of bias, the removal of an elected city treasurer. More recently it has been held that Michigan courts may enjoin a discharge that would not meet constitutional requirements. *State Employees Association v. Department of Mental Health*, 421 Mich. 152, 365 N.W.2d 93, 100 (1984).

The plaintiff in the case at bar had the burden of pleading and proving the inadequacy of his remedies under state law. *Wilson v. Beebe*, 770 F.2d 578, 583 (6th Cir.1985) (*en banc*); *Vicory v. Walton*, 721 F.2d 1062, 1065–66 (6th Cir.1983), *cert. denied*, 469 U.S. 834, 105 S.Ct. 125, 83 L.Ed. 67 (1984). Far from alleging that Michigan law gives him no right to a proper post-termination hearing, the plaintiff specifically pleaded that his interests in his continued employment "are protected under Mich. Const.1963, Art. 1, § 17." His amended complaint also set forth claims sounding in contract and tort under the common law of Michigan, which claims could likewise be resolved in a post-termination adversary proceeding. Contrary to my original view,[1] therefore, I am persuaded that the plaintiff failed to state a claim for deprivation of property without the process due him under the Federal Constitution.

RYAN, Circuit Judge (dissenting).

As the author of the opinion for this court that affirmed the decision of the district court and which was later vacated by the order of a majority of my colleagues, I respectfully dissent.

I have no disagreement at all with the court's assertion that the pretermination hearing to which certain public employees are entitled does not carry with it the whole panoply of guarantees that may be required by the due process clause for a post-termination hearing such as the rights to produce witnesses, introduce evidence, cross-examine witnesses, and have the assistance of counsel. Likewise, I agree that the Constitution does not entitle a tenured public employee to a pretermination hearing before a "neutral decisionmaker" or "an impartial judge," as my colleagues put it.

The court's en banc opinion incorrectly states that

> The District Court, and the panel decision of our Court which has now been vacated by the grant of *en banc* review (see Rule 14, Rules of the Sixth Circuit), held that [*Cleveland Board of Education v.*] *Loudermill* [, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985),] requires a pretermination hearing before a *neutral decisionmaker....*

(Emphasis added.) This court's panel decision did not hold that *Loudermill* requires a hearing before a "neutral decisionmaker." The district court said that; the panel did not. Indeed, writing for the panel, I stated:

> ment failed to pass constitutional muster." I now find myself in the same boat as that on which Baron Bramwell confessed himself a passenger when he said "[t]he matter does not appear to me now as it appears to have appeared to me then." *Andrews v. Styrap*, 26 L.T.R. (N.S.) 704, 706 (Ex. 1872).

---

1. Although, as a member of the three-judge panel that heard this appeal originally, I dissented from the conclusion that the plaintiff could recover back pay even if it should ultimately be established that there was good cause for the discharge, I expressed the view that "the procedure followed in the termination of the employ-

It is not constitutionally required that the decisionmaker be absolutely impartial.

*Duchesne v. Williams*, No. 86–1017, slip op. at 12 (6th Cir. June 16, 1987).

If, however, there is a constitutional entitlement to a pretermination hearing in this case, as my colleagues correctly hold there is, it must of necessity be a hearing that has some meaning to it—a hearing in which there is at least a reasonable likelihood that the person conducting the hearing, if not entirely impartial, is not so personally involved in the accusation and charges against the subject employee as to be incapable of "hearing" what the employee has to say because of the preempting, deafening sound of his own biased accusatory voice. If at least that measure of impartiality is not required of the individual conducting a pretermination hearing, then the hearing would indeed be meaningless.

My brother observes "that there may be cases—perhaps this is one of them—in which the supervisory official is so biased that the *Loudermill* 'right of reply' process is meaningless." Indeed it is one of them, and that was the basis for the district court's decision, this court's panel decision, and this dissent.

As I pointed out in part IV of the opinion for the court, from which there was no dissent, and which has now been vacated,

> In the district court's view, the pre-existing animosity between Williams and Duchesne, and the fact that it was Williams who initially fired Duchesne, who developed many of the charges against Duchesne, who testified against Duchesne at the hearing, and who thereafter weighed the evidence and decided that it supported Duchesne's termination, sufficed to destroy the fairness of the termination hearing.

We recognize that an employment termination hearing is ordinarily presided over by a decisionmaker with at least some connection with the employer, if not a broad shared interest. It is not constitutionally required that the decisionmaker be absolutely impartial. In

*Hortonville Joint School District v. Hortonville Education Ass'n*, 426 U.S. 482 [96 S.Ct. 2308, 49 L.Ed.2d 1] (1976), the Supreme Court held that striking teachers' termination hearings before the same body against whom they were striking, the local school board, and with whom the teachers bargained collectively over the terms of their employment, were not constitutionally invalid. The Court reasoned that "the teachers did not show, and the Wisconsin courts did not find, that the Board members had the kind of personal or financial stake in the decision that might create a conflict of interest, and there is nothing in the record to support charges of personal animosity." *Id.* at 491–92 [96 S.Ct. at 2313–14]. The Court also stated:

> "Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not ... disqualify a decisionmaker. *Withrow v Larkin*, 421 US 35, 47, 43 L Ed 2d 712, 95 S Ct 1456 [1464] (1975); *FTC v Cement Institute*, 333 US 683, 700–703, 92 L Ed 1010, 68 S Ct 793 [803–804] (1948). Nor is a decisionmaker disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not 'capable of judging a particular controversy fairly on the basis of its own circumstances.' *United States v Morgan*, 313 US 409, 421, 85 L Ed 1429, 61 S Ct 999 [1004] (1941); see also *FTC v Cement Institute*, supra, at 701, 92 L Ed 1010, 68 S Ct 793 [at 803]."

*Id.* at 493 [96 S.Ct. at 2314]. After weighing the interests involved, the Court concluded that the teachers had "failed to demonstrate that the decision to terminate their employment was infected by the sort of bias that we have held to disqualify other decisionmakers as a matter of federal due process." *Id.* at 496 [96 S.Ct. at 2316].

We also recognize that, under *Hortonville*, a less than impartial decisionmaker may be tolerable if there are no contested issues of fact to be resolved by that decisionmaker. In *Kendall v. Board of*

*Education,* 627 F.2d 1 (6th Cir.1980), this court held that a school board's pretermination grievance procedure was constitutionally inadequate because the teacher whose contract was terminated

> "was compelled to appear before the same administrators who had investigated the incidents and recommended her dismissal. Since factfinding on the accusations was necessary, due process requires that the same administrators who investigated the matter not determine her guilt or innocence."

\* \* \* \* \* \*

[But] there is no construction of the facts of this case that could support the view that Williams was not too biased to give Duchesne a fair hearing. Even if he is accorded "the presumption of honesty and integrity in policymakers with decisionmaking power," *Hortonville,* 426 U.S. at 497 [96 S.Ct. at 2316], the record clearly shows the existence of personal animosity between Williams and Duchesne such that Williams' subsequent impartiality was, at a minimum, suspect. *Cf. Taylor v. Hays* [Hayes], 418 U.S. 488, 501 [94 S.Ct. 2697, 2704, 41 L.Ed.2d 897] (1974). This, taken together with Williams' in-depth involvement in every stage of the proceedings, forbids the conclusion that Williams was a suitable hearing officer. Williams was involved in some of the incidents that formed the basis for Duchesne's termination, and he was principally responsible for accusing, trying, and deciding the issues at Duchesne's hearing. Under the circumstances, the hearing provided to Duchesne was constitutionally deficient.

*Duchesne,* No. 86–1017, slip op. at 11–14.

Thus, neither the district court's dispositive opinion nor this court's panel decision held that Duchesne's due process rights were violated because he was not given a pretermination hearing before a "neutral decisionmaker" or an "impartial judge." Both courts acknowledged that the hearing officer need not be totally impartial. The learned district judge held, instead, after carefully reviewing the undisputed facts of Mr. Williams' relationship with Mr. Duchesne, and particularly his role as "accuser, witness, and judge," that "the evidence" is "that the plaintiff received an unfair and partial hearing," and that *"[i]n this situation,* due process demands that someone other than [Mr. Williams] conduct the hearing." (Emphasis added.) This court's panel found that the record supported the district court's conclusion that on the undisputed facts of *this* case, the hearing officer's relationship to the plaintiff was so uniquely accusatory and partisan that he was *"too* biased to give Duchesne a fair hearing."

After careful consideration of the briefs and arguments upon rehearing en banc, I continue to be satisfied that the pretermination hearing to which Mr. Duchesne was constitutionally entitled under the Due Process Clause, even if it be only a summary, informal, and peremptory "right of reply" must, nevertheless, be a hearing in which, to paraphrase my colleague, "the supervisory official is [not] *so* biased that the *Loudermill* 'right of reply' process is meaningless."[1] (Emphasis added.) The uncontradicted record proof in this case is that it was.

Consequently, I must respectfully dissent.

---

**1.** One searches the Supreme Court's *Loudermill* opinion in vain to find the constitutionally mandated pretermination hearing defined as a mere "right of reply." That characterization of the hearing is this court's creation in its own *Loudermill* opinion, 721 F.2d at 560, and is conspicuously absent from the Supreme Court's opinion.