888 F.2d 128
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Constance TOWER, Plaintiff-Appellant,
v.
AREA METROPOLITAN SERVICES AGENCY COUNCIL, Metropolitan Area
Police Emergency Services, CCS-Mapes, Michael
Fitzgibbon, Michigan Law Enforcement
Union Teamsters Local 129,
Defendants-Appellees,
International Brotherhood of Teamsters, Defendant.
 No. 88-2073.
 United States Court of Appeals, Sixth Circuit.
 Nov. 2, 1989.
 
 Before KENNEDY, RALPH B. GUY, Jr., and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Constance Tower, appeals the district court's order entering summary judgment in favor of defendants-appellees, Area Metropolitan Services Agency Council ("AMSA"), Metropolitan Area Police Emergency Services, CCS-Mapes, and Michael Fitzgibbon, on her claims brought under 42 U.S.C. Sec. 1983. For the reasons discussed below, we affirm the district court's judgment.
 
 I.
 
 2
 Tower was hired as a probationary dispatcher in 1977 by AMSA, an agency formed by municipal governments in the Battle Creek, Michigan area to provide dispatching services for police departments, fire departments, and ambulance services of the contributing governments. In 1979, Tower was promoted to senior dispatcher and given supervisory responsibilities.
 
 
 3
 Beginning in 1984, a dispatcher under Tower's supervision, Sue Schindler, complained of receiving harassing telephone calls. She also complained that she had received threatening notes on her car while it was parked in the parking lot of the Battle Creek Police Department. During the first week of November 1985, Schindler received three such notes. On November 6, 1985, at the request of Schindler and defendant Fitzgibbon, the director of AMSA, the Battle Creek Police Department placed Schindler's car under surveillance.
 
 
 4
 Officer Walters, the officer conducting the surveillance, indicated in his notes and police report that, on the morning of November 7, 1985, he saw Tower approach her car, remove a white piece of paper from the inside of the car, walk to Schindler's car, and place the paper on the windshield under the windshield wiper. Officer Walters then relayed this information to Terry Tobias, Deputy Chief of the Battle Creek Police Department. Tobias and Walters approached Schindler's car and removed a note from the windshield, which was constructed from words cut out of a newspaper and read: "Sues [sic] obituaries [sic] shot in head."
 
 
 5
 Tobias and Walters disclosed this information to Fitzgibbon and told him that they wanted to question both Schindler and Tower about the incident. Officer Baker from the Battle Creek Police Department conducted the questioning of Tower. He indicated to Tower that the police had a suspect in the case and wished to speak to her because she was Schindler's supervisor. He informed Tower of her Miranda rights, and Tower told him that she wished to speak to an attorney. Officer Baker terminated the questioning, and Tower was subsequently suspended with pay.
 
 
 6
 On November 12, 1985, Tower, now accompanied by counsel, was interviewed by Fitzgibbon. Prior to the interview, Fitzgibbon informed Tower that the interview was for administrative purposes only and that nothing she said could be used against her in any subsequent criminal prosecution. At that interview, Tower explained that, on the morning in question, she had gone to her car to get some tissue and that she had gone to Schindler's car to see if anyone had left a note. She claimed that she saw no note on the windshield at that time. Fitzgibbon repeatedly asked Tower why she had been unwilling to speak to the investigating officer when she now claimed that she did not leave the note. Tower stated that the situation had made her uncomfortable and that she had wished to consult with an attorney before answering questions.
 
 
 7
 Fitzgibbon informed Tower in a letter dated November 21, 1985 that he was terminating her employment. In the letter, Fitzgibbon commented on the fact that Tower had refused to speak with him about the incident and set forth three grounds for Tower's termination: (1) if the note was intended as a threat, she violated a work rule prohibiting engaging in offensive conduct toward a fellow-employee while on duty; (2) if it was not intended as a true threat but only as a device to make the police believe that Schindler was being threatened, she committed the offense of aiding and abetting the filing of a false police report; and (3) she violated a rule prohibiting leaving the dispatch center without being properly relieved, an infraction for which Tower had been disciplined with a two-day suspension on an earlier occasion.
 
 
 8
 After unsuccessfully pursuing a grievance through negotiation and binding arbitration, Tower filed this action in May 1987. In her complaint, she alleged that her discharge violated 42 U.S.C. Sec. 1983 on two separate grounds. First, she asserted that defendants violated her Fifth and Sixth Amendment rights because her dismissal was based upon the exercise of her rights to counsel and against self-incrimination. Second, she alleged that her right to due process was violated because the pre-termination hearing was not conducted by an impartial decision-maker. The district court granted summary judgment on both claims.
 
 II.
 A. Fifth and Sixth Amendment Claims
 
 9
 In Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977), the Supreme Court outlined the procedure to be followed with respect to an employee's claim under section 1983 that she was discharged for engaging in constitutionally protected conduct. See also Stern v. Shouldice, 706 F.2d 742, 747 (6th Cir.), cert. denied, 464 U.S. 993 (1983). Under the Mt. Healthy analysis, the employee must establish that her conduct was constitutionally protected, and that it was a substantial or motivating factor in the decision to discharge her. The burden of proof then shifts to the employer to demonstrate that it would have discharged the employee even in the absence of the protected conduct.
 
 
 10
 The district court determined that Tower's refusal to speak with Officer Baker on the day of the incident was constitutionally protected conduct. Defendants do not argue that the district court erred in making this determination.
 
 
 11
 The district court apparently then found that there was sufficient evidence demonstrating that the decision to terminate Tower's employment was predicated, in part, on Fitzgibbon's improper consideration of Tower's refusal to talk with Officer Baker. Fitzgibbon repeatedly questioned Tower about her refusal to be interviewed by Officer Baker and mentioned her refusal in his letter stating the reasons for her discharge. From these facts, a reasonable jury could have concluded that her declining to talk with Officer Baker was a substantial factor in the decision to discharge her.
 
 
 12
 The district court then correctly held that, under the Mt. Healthy analysis, the employer will prevail if it establishes by a preponderance of the evidence that it would have terminated the employee, even in the absence of her constitutionally protected conduct. However, the district court, having correctly articulated the proper standard, then required Tower to show that she was discharged solely due to her constitutionally protected conduct. In doing so, the district court failed to shift the burden of proof on this issue to the defendants, as required by Mt. Healthy.
 
 
 13
 The question that the court should have addressed, therefore, is whether a reasonable jury could only conclude that Tower would have been discharged even in the absence of her constitutionally protected conduct. In addressing this question, we initially note that defendants are only required to prove that the decision to discharge Tower was motivated by a reasonable belief that Tower placed the threatening note on Schindler's car or by the fact that Tower left the dispatch center without being properly relieved. Defendants need not prove that Tower actually put the note on Schindler's car.
 
 
 14
 With this standard in mind, we believe that a reasonable jury could only conclude that Tower would have been discharged, even in the absence of her refusal to speak to Officer Baker. The evidence is undisputed that Officer Walters informed Fitzgibbon that he had seen Tower place the note on Schindler's car. It is also undisputed that Officer Walters and Deputy Chief Tobias then found the threatening note on the windshield of the car. Although the discharge letter did make reference to Tower's initial refusal to speak, it is clear from the letter that Fitzgibbon also relied heavily upon the fact that Officer Walters told him that he had seen Tower place the note on the car and the fact that the note was subsequently found on the car.
 
 
 15
 Under the circumstances, then, the district court's error in failing to shift the burden to the defendants was harmless, since, under the proper standard, defendants were entitled to summary judgment.
 
 B. Due Process Claim
 
 16
 Tower also contends that she was entitled to an impartial decision-maker at the pre-termination hearing. This issue is controlled by this court's recent en banc decision in Duchesne v. Williams, 849 F.2d 1004 (6th Cir.1988), cert. denied, 109 S.Ct. 1535 (1989), where we held that a public employee is not entitled to a neutral or impartial decision-maker at a pre-termination hearing even when, as Tower alleges in this case, the decision-maker is so biased that the pre-termination hearing is meaningless. Id. at 1008. We concluded that a full, adversary, post-termination hearing will serve to ferret out any such bias. Id.
 
 III.
 
 17
 The judgment of the district court is affirmed.