William M. FAIRMAN, Plaintiff,

v.

Khelleh KONTEH, etc.,
et al., Defendant.

No. 3:04 CV 7254.

United States District Court,
N.D. Ohio,
Western Division.

March 23, 2005.

Sol Zyndorf, Zyndorf & Saum, Toledo, OH, for Plaintiff.

Nicole S. Moss, Jill J. Couch, Office of the Attorney General, State of Ohio Employment Law Section, for Defendants.

## *MEMORANDUM OPINION*

KATZ, Senior District Judge.

This is a 42 U.S.C. § 1983 action in which Plaintiff, Walter M. Fairman, alleges he was discharged from his position as a corrections officer with the Ohio Department of Rehabilitation and Correction (ODRC) on the basis of his race in violation of the equal protection and due process clauses of the Fourteenth Amendment. Plaintiff also asserts a state law claim of intentional interference with a business/contractual relationship.

Pending is Defendants' motion to dismiss. (Doc. No. 3). For the following reasons, the motion shall be granted in part and denied in part.

### I. Background

Fairman began employment with the ODRC in July, 1998, and worked as a

corrections officer at the Toledo Correctional Institution (TCI) from August, 2000, until his termination on July 10, 2002.

Fairman became involved in a romantic relationship with another corrections officer, Cynthia San Pedro, but allegedly terminated the relationship because San Pedro became physically abusive. After the relationship ended, Fairman claims that San Pedro stalked him while at work and made abusive comments and threats toward him. Fairman alleges that on one occasion, San Pedro damaged property belonging to him and his female roommate.

Fairman contends that on March 30, 2002 San Pedro continued to harass him by cursing him, deliberately bumping into him, and calling his roommate a "whore." (Doc. 1 at 4.) On the same day, San Pedro filed an incident report claiming that Fairman punched her. She also claimed that after speaking to Lieutenant Pettaway, a fellow corrections officer, following roll call, Fairman stated: "Oh, you can talk to them f—king ni—ers but you cannot talk to me." (Doc. 1 at 5.) Fairman contends that these allegations were false and made solely for the purpose of harming Plaintiff and interfering with his work at TCI.

Khelleh Konteh, Warden of TCI, placed Fairman on administrative leave with pay on April 11, 2002. On May 13, 2002, Fairman received notice that a predisciplinary conference had been scheduled for May 17, 2002. Konteh appointed Loreene Pettaway, Lieutenant Pettaway's aunt, to serve as the hearing officer during the conference. Fairman contends that at the time, Loreene Pettaway was aware that Fairman had been accused of referring to her nephew as a "f—king ni—er."

During the hearing, San Pedro testified that Fairman had referred to Lieutenant Pettaway as a "f—king ni—er." Despite this testimony, which Fairman contends was false, the hearing officer did not recuse herself and ruled against Fairman.

Konteh terminated Fairman on July 7, 2002.

Fairman brought this § 1983 action against Konteh, San Pedro, and Loreene Pettaway alleging violations of equal protection and procedural due process and asserting a state law claim for intentional interference with a business/contractual relationship. Defendants have filed a motion to dismiss on the basis of Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

II.   Discussion

Defendants seek a dismissal pursuant to Fed.R.Civ.P. 12(b)(6) on Plaintiff's equal protection and procedural due process claims on the basis that they are entitled to qualified immunity because Plaintiff's complaint fails to state any constitutional violation committed by defendants. Defendants also seek dismissal under Fed. R.Civ.P. 12(b)(1) on Plaintiff's claim of intentional interference with a business/contractual relationship and contend that this Court lacks jurisdiction over the state law claim because state employees may not be sued until the Court of Claims has determined that the state employees are not entitled to immunity.

A.   Applicable Standards

1.   12(b)(1) Motion to Dismiss Standard

Generally, Fed.R.Civ.P. 12(b)(1) motions to dismiss for lack of subject matter jurisdiction fall into two categories: facial attacks and factual attacks. Fed.R.Civ.P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994) cert. denied. 513 U.S. 868, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994). A facial attack challenges the sufficiency of the pleading itself. Upon receiving such a motion, the Court must take all of the material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Id.* (citing *Scheuer v. Rhodes*, 416

U.S. 232, 235–37, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974)). In contrast, a factual attack challenges the factual existence of subject matter jurisdiction. *See Ohio Hosp. Ass'n v. Shalala*, 978 F.Supp. 735, 739 (N.D.Ohio.1997).

When a Court is inquiring about whether it has subject matter jurisdiction, "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994) cert. denied. 513 U.S. 868, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994) (internal citations omitted). *See also RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996). "In reviewing such a motion, a district court is to probe the facts and assess the validity of its own jurisdiction. In doing so, the Court has a wide discretion to consider affidavits and the documents outside the complaint, and may even conduct a limited evidentiary hearing if necessary." *Ohio Hosp. Ass'n v. Shalala*, 978 F.Supp. 735, 739 (N.D.Ohio.1997) (relying on *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990)). The plaintiff bears the burden of demonstrating that the Court has and may appropriately exercise jurisdiction over the subject matter. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir.1996). The Court may examine evidence of its power to hear a case, and must make any factual findings to determine whether it has jurisdiction. *Kroll v. United States*, 58 F.3d 1087, 1090 (6th Cir.1995); *Rogers v. Stratton Inds., Inc.*, 798 F.2d 913, 915 (6th Cir.1986); *Ohio Hosp. Ass'n v. Shalala*, 978 F.Supp. 735, 739 (N.D.Ohio.1997). A Fed. R. Civ. Pro. 12(b)(1) motion is not converted into a Fed.R.Civ.P. 56 motion for summary judgment when a Court examines evidence for this purpose. *Rogers v. Stratton Inds., Inc.*, 798 F.2d 913, 915 (6th Cir.1986).

### 2. 12(b)(6) Motion to Dismiss Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the function of the Court is to test the legal sufficiency of the complaint. In scrutinizing the complaint, the Court is required to accept the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984), while viewing the complaint in a light most favorable to the plaintiffs, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). The Court is without authority to dismiss the claims unless it can be demonstrated beyond a doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Westlake, supra*, at 858. *See generally* 2 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, § 12.34[1] (3d ed.2004).

### B. Qualified Immunity

Qualified immunity protects "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Defendants contend they are entitled to qualified immunity because they violated no clearly established constitutional right of which they were or reasonably should have been aware.

The Supreme Court held in *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), that resolution of claims of qualified immunity involves two steps. First the Court must determine whether the facts alleged suffice to show a

constitutional violation. *See Greene v. Barber*, 310 F.3d 889, 894 (6th Cir.2002) (citing *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151). If, viewing the facts most favorably for the plaintiff, he or she can prove no violation of any of his or her constitutional rights, no further inquiry concerning qualified immunity is required. *Id.*

If a jury could find that the plaintiff's constitutional rights were violated, the next step is to determine whether the right was clearly established. *Id.* In making this determination, " '[t]he relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' " *Id.* (quoting *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151). If so—if the constitutional right was clearly established, the defendant cannot maintain the defense of qualified immunity.

## C. Equal Protection Claim

Plaintiff's complaint alleges that Defendants violated his Fourteenth Amendment rights by terminating him because of Plaintiff's race. Plaintiff also contends that because of Plaintiff's race, Konteh appointed a hearing officer whom he knew had a conflict of interest and that because of Plaintiff's race and despite her conflict of interest, Loreene Pettaway served as the hearing officer for his pre-termination hearing.

To establish an equal protection claim against a public employer under § 1983, a "plaintiff must show that the employer made an adverse employment decision with discriminatory intent and purpose." *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir.2000) (quoting *Boger v. Wayne County*, 950 F.2d 316, 324–25 (6th Cir.1991)). Introducing evidence of discriminatory intent and suggesting that the intent motivated the adverse employment decision is not sufficient. *Id.* Rather, a plaintiff must demonstrate that the adverse employment decision would not have occurred but for his or her race. *Id.* The Sixth Circuit applies the *McDonnell Douglas* framework used in Title VII cases to claims of race discrimination in the public employment context under § 1983. *See e.g., Weberg*, 229 F.3d at 522.

Defendants contend that Plaintiff's complaint fails because it does not contain "factual, non-conclusory allegations" and seek to pose a heightened pleading requirement on Plaintiff. They rely heavily upon *Vaughn v. U.S. Small Bus. Admin.*, 65 F.3d 1322 (6th Cir.1995) for the proposition that: "It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings...." *Id.* at 1327. The rationale behind determining the issue of qualified immunity early in the litigation is the desire to avoid the substantial costs of litigation and the distraction created by taking officials away from their governmental duties. *Id.* at 1326. While these concerns are valid, courts must also be careful in making rulings so hastily on the issue of qualified immunity for fear of placing our liberal pleading standards in jeopardy. *Id.*

In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), in the context of a racial discrimination claim under Title VII, the U.S. Supreme Court erred on the side of the liberal pleading standard of Fed.R.Civ.P. 8(a)(2), which requires the complaint to include only "a short and plain statement of the claim showing that the pleader is entitled to relief." The Court held that the *McDonnell Douglas* framework "is an evidentiary standard, not a pleading requirement." *Id.* at 510, 122 S.Ct. 992. In the context of a motion to dismiss, the Court refused to require a plaintiff to

plead facts establishing a prima facie case under *McDonnell Douglas,* and instead applied the ordinary rules for assessing the sufficiency of a complaint. *Id.* at 511, 122 S.Ct. 992 (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ("When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.")).

Moreover, in *Goad v. Mitchell,* 297 F.3d 497, 503 (6th Cir.2002), the Sixth Circuit held that the Supreme Court's decision in *Crawford–El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) invalidated the heightened pleading requirement the Sixth Circuit had imposed on civil rights plaintiffs in cases in which defendants asserted the defense of qualified immunity. Accordingly, plaintiffs are no longer required to respond to the defense of qualified immunity by "providing 'specific non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity.' " *Goad,* 297 F.3d at 501 (quoting *Veney v. Hogan,* 70 F.3d 917, 922 (6th Cir.1995))

■ Following *Swierkiewicz* and *Goad,* the Court refuses to impose a heightened pleading requirement on Plaintiff. Plaintiff has alleged a constitutional violation of race discrimination—that because of his race, certain decisions were made regarding the hearing officer to serve at his pre-termination hearing and that because of his race, he was terminated. The Court also finds that the right not to be terminated because of race is clearly established. Because Plaintiff has sufficiently alleged a violation of a clearly established constitutional right, Defendants' motion to dismiss

Plaintiff's equal protection claim shall be denied.

## D. Procedural Due Process Claim

■ Plaintiff also asserts that he was deprived of his Fourteenth Amendment procedural due process rights when Konteh appointed Pettaway, who had a conflict of interest, to serve as the hearing officer for his pre-termination proceeding. To maintain a procedural due process claim under § 1983, Fairman must have a protected property interest in continued employment. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (citing *Bd. of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Defendants do not dispute that Fairman had a property interest in his continued employment as a corrections officer at ODRC.

■ To satisfy due process, a public employee who has a protected property interest must be afforded notice, the opportunity to respond at a pre-termination hearing prior to discharge, and post-termination review. *Loudermill,* 470 U.S. at 547–48, 105 S.Ct. 1487. An elaborate, full evidentiary hearing is not required prior to termination. *Id.* at 545, 105 S.Ct. 1487. "Rather, the pre[-]termination hearing is to provide an initial check against mistaken conclusions, 'essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.' " *Farhat v. Jopke,* 370 F.3d 580, 595 (6th Cir.2004) (quoting *Loudermill,* 470 U.S. at 545–46, 105 S.Ct. 1487).

The Sixth Circuit has also recognized that, generally, in the pre-termination stage, due process does not require a neutral and impartial decisionmaker. *Id.* at 595, 105 S.Ct. 1487; *Duchesne v. Williams,* 849 F.2d 1004, 1007–08 (6th Cir.

1988). However, the Court acknowledged "that there may be cases ... in which the supervisory official is so biased that the Loudermill 'right-of-reply' process is meaningless." *Duchesne,* 849 F.2d at 1008. In those circumstances, the Court relies on the existence of a "full post-termination adversary, trial-type hearing" with a neutral decisionmaker "to ferret out bias, pretext, deception and corruption by the employer in discharging the employee." *Id.*

■ "For a decisionmaker to have 'disqualifying bias,' the decisionmaker must have a 'personal or financial stake in the decision that might create a conflict of interest' or must harbor 'personal animosity' toward the employee." *Prichard v. Lafferty,* No. 91–5257, 1992 WL 205659, *4 (6th Cir. Aug.25, 1992) (quoting *Hortonville Joint Sch. Dist. v. Hortonville Educ. Ass'n,* 426 U.S. 482, 491–92, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976)). Personal bias that stems from knowledge a decisionmaker acquires from participating in a case, however, does not disqualify a decisionmaker. *Id.*

■ In the present case, Fairman contends that San Pedro filed an incident report against him alleging that he punched San Pedro and made a racist comment about a fellow corrections officer, Lieutenant Pettaway. Konteh appointed Lieutenant Pettaway's aunt, Loreene Pettaway, to serve as the hearing officer during the predisciplinary conference concerning this complaint. Since Fairman allegedly used the racist slur to describe her nephew, Loreene Pettaway certainly had a personal stake in the decision sufficient to create a conflict of interest, and in all likelihood, harbored personal animosity toward Fairman as a result.

Based on Loreene Pettaway's personal conflict of interest, this may be one of those cases in which the supervisory official is so biased as to render the opportunity to respond meaningless. Moreover, and very unlike the situations in *Duchesne* and *Farhat,* based on the record before the Court, no facts are evident to indicate that Fairman had the opportunity to ferret out this bias in a post-termination hearing with a neutral decisionmaker. For this reason, the Court finds that Fairman has satisfied the first branch of *Saucier* by sufficiently pleading a procedural due process claim based on disqualifying bias.

Further, this right is clearly established; it would be clear to a reasonable officer in Konteh's position that his conduct in appointing Loreene Pettaway, as well as a reasonable officer in Loreene Pettaway's position to serve as a hearing officer when faced with such a personal conflict of interest, was unlawful. Common sense dictates that to appoint a hearing officer with a known personal conflict or to serve as a hearing officer with a conflict of interest is in error. Accordingly, because Plaintiff has sufficiently alleged a violation of a clearly established constitutional right, Defendants' motion to dismiss Plaintiff's due process claim shall be denied.

E. Intentional Interference with a Business/Contractual Relationship

■ Plaintiff contends that San Pedro intentionally interfered with his business relationship with the Ohio Department of Correction and Rehabilitation by falsely accusing Plaintiff of wrongdoing. Defendants contends that this Court lacks jurisdiction over Plaintiff's state law claim because state employees are immune from suit.

Ohio law grants immunity to officers and employees of the State of Ohio by virtue of Ohio Rev.Code § 9.86:

Except for civil actions that arise out of the operation of a motor vehicle and civil actions in which the state is the plaintiff, no officer or employee shall be liable in

any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

The term "officer or employee" is defined as: "A person who, at the time a cause of action against the person arises, is serving in an elected or appointed office or position with the state or is employed by the state." O.R.C. § 109.36(A)(1)(a).

■ Ohio law also requires that the Court of Claims make the initial determination as to whether an officer or employee is entitled to civil immunity under § 9.86. Ohio Rev.Code § 2743.02(F) states:

A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner *shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action.*

The filing of a claim against an officer or employee under this division tolls the running of the applicable statute of limitations until the court of claims determines whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code.

*Id.* (emphasis added). Thus, "[u]nder Ohio law, ... state employees may not be sued unless and until it has been determined by the Court of Claims that they are not entitled to immunity." *Haynes v. Marshall,* 887 F.2d 700, 704 (6th Cir.1989). Prior to the satisfaction of that condition, "there is no claim under Ohio law upon which relief may be granted against state employees in their individual capacities." *Id.* at 705.

■ A federal court exercising pendent jurisdiction over state law claims sits as a court of the forum state and must apply the substantive law of the forum state. *Id.* at 705 (citing *Guaranty Trust Co. v. York,* 326 U.S. 99, 108–09, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)). Because Ohio law does not recognize Plaintiff's state law claim until the Court of Claims has determined the issue of immunity, this Court has no choice but to dismiss Plaintiff's claim for intentional interference with a business/contractual relationship pursuant to Fed.R.Civ.P. 12(b)(1).

III. Conclusion

Based on the foregoing, Defendants' motion to dismiss is denied as to Plaintiff's equal protection and procedural due process claims, but granted as to Plaintiff's claim for intentional interference with a business/contractual relationship. Plaintiff's claim for intentional interference with a business/contractual relationship is dismissed without prejudice.

IT IS SO ORDERED.

*JUDGMENT ENTRY*

For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that Defendants' motion to dismiss (Doc No. 3) is denied as to Plaintiff's equal protection and procedural due process claims, but granted as to Plaintiff's claim for intentional interference with a business/contractual

relationship. Plaintiff's claim for intentional interference with a business/contractual relationship is dismissed without prejudice.